*In re* SLUM CLEARANCE BETWEEN HASTINGS, DE QUINDRE, MULLETT STREETS AND GRATIOT AVENUE.

APPEAL OF UNITED PLATERS, INC.

1. Eminent Domain—Damages—Removal of Personal Property. No damages are allowable for removal of personal property in condemnation proceedings.

2. Same—Construction of Constitution.
A liberal construction is given to provision of Constitution that private property shall not be taken for public use without necessity therefor being first determined and just compensation therefor being first made or secured but legislature has no power to create any exception to such constitutional guarantee (Const 1908, art 13, § 1).

3. Same—Just Compensation.
Nothing can be fairly termed just compensation which does not put the party injured by the exercise of the power of eminent domain in as good a condition as he would have been if the injury had not occurred (Const 1908, art 13, § 1).

4. Same—Trade Fixtures—Damages for Removal Costs.
Trade fixtures used in the conduct of a business upon premises were properly considered realty in condemnation proceedings and damages are allowable for removal costs (Const 1908, art 13, § 1).

5. Same—Consequential Damages.
So-called consequential damages are allowable under some cir-

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 18 Am Jur, Eminent Domain § 240.
[4, 6, 7] 18 Am Jur, Eminent Domain §§ 253, 255.
[4, 6, 7] Compensation in eminent domain in respect of fixtures or chattels used in connection with real property taken or damaged. 90 ALR 159.
[9] 18 Am Jur, Eminent Domain §§ 259, 260.

cumstances but not invariably under all conditions in the taking of private property for public use.

6. SAME—TRADE FIXTURES—ELECTROLYTIC PLATING BUSINESS—CHEMICAL SOLUTIONS—MOLTON METALS—CONSTRUCTIVE ANNEXATION—EVIDENCE.

    Chemical solutions and molten metal, contained in tanks and furnaces used in appellant's electrolytic plating business, were as much trade fixtures as their containers for which they were entitled to damages in condemnation proceedings for their removal or destruction, where, under the circumstances, the containers were valueless without their contents, there being a constructive annexation of the contents to the real estate, hence, the owner should have been permitted to present evidence of loss or moving expense of the contents.

7. SAME—TRADE FIXTURES—TESTS APPLIED.

    The general tests as to whether or not personal property that is trade fixtures may be considered as realty in condemnation proceedings are (1) annexation to the realty, either actual or constructive; (2) adaption or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold.

8. FIXTURES—CHATTELS—USE—INTENT.

    The use, nature and intention of the parties must be considered in distinguishing between what is a fixture and what a chattel when neither is annexed to the freehold.

9. EMINENT DOMAIN—DAMAGES—LOSS OF PROFITS FROM INTERRUPTION OF BUSINESS.

    Owner of electrolytic plating business was properly refused right to present evidence in condemnation proceedings of loss of profits for "interruption of business" due to moving, since loss of profits is speculative.

10. SAME—REMAND—FURTHER TESTIMONY—CHEMICAL SOLUTIONS—MOLTEN METALS.

    Case is remanded for the taking of further testimony in condemnation proceedings by city involving appellant's electrolytic plating business, where trial court allowed jury to assess cost of removing tanks and furnaces but not the chemical solutions or molten metals therein which are used continuously.

Appeal from Recorder's Court for the City of Detroit; Krause (Paul E.), J. Submitted January 8, 1952. (Docket No. 13, Calendar No. 45,114.) Decided March 6, 1952.

In the matter of Slum Clearance between Hastings, De Quindre, and Mullett Streets and Gratiot Avenue. Verdict and judgment of necessity and fixing compensation for parcels taken. United Platers, Inc., appeals. Reversed and remanded for further proceedings.

*Paul T. Dwyer,* Acting Corporation Counsel, and *Vance G. Ingalls,* Assistant Corporation Counsel, for petitioner.

*Fischer, Brown, Sprague, Franklin & Ford,* for appellant.

BOYLES, J.    United Platers, Inc., appeals from an order confirming a verdict by jury condemning certain land and buildings in Detroit for slum clearance, and particularly from the court's refusal to allow appellant to show its loss in connection with its plating solutions and molten metals, and to show business loss.    Other questions, raised by other appellants in the same condemnation proceeding, were recently considered by us in *Re Slum Clearance Between Hastings, Gratiot, De Quindre and Mullett Streets,* 331 Mich 714.

By stipulation, it was agreed in the trial court that the jury might make one award to appellant corporation jointly with certain other individuals who owned separate parcels of the same land and buildings condemned, hence, United Platers, Inc., will be considered as the respondent here, it being the only appellant in the present case.

Appellant employs approximately 150 persons in conducting its business of electrolytic plating of tin and some half-dozen other metals located in the buildings condemned.    More than 100 tons of material are turned out and more than a million screws are plated by it every day.    The essential operation in the business is the immersing of the material to be plated in tanks of various chemical solutions, and there subjecting it to electrolytic action.    The fix-

tures in the buildings include plating tanks of various constructions and materials, pumps, agitators, electric motors, melting pots, et cetera. Many of the tanks are too large to be moved, some will have to be taken apart, while others can be moved if empty.

Also in the plant, in the tanks and other containers and being used in the various plating processes, are approximately 40,000 gallons of different chemical solutions, the use of which requires scientific precision and strict chemical control. The ingredients are expensive, and the solutions must be carefully compounded. Many of these solutions last indefinitely, though additions are made to them from time to time. Some of the cleaning and pickling solutions are occasionally discarded and replaced. If the solutions are to be moved, ordinary containers cannot be used and ones chemically pure must be found—a slight impurity makes the chemical unfit for use. Some of the solutions can only be moved in glass-lined or rubber-lined containers and some cannot be moved at all. Also, in the furnaces and melting pots are about 50,000 pounds of molten tin and molten lead.

In the course of the condemnation hearing, appellant offered to prove that its 39,640 gallons of plating solutions are of 2 sorts—21,406 gallons which cannot be moved at all, or which cannot be moved except at expense greater than their value, and 18,234 gallons whose value justifies or whose nature permits moving. The trial court refused to allow this evidence to be presented to the jury. Appellant also offered to show that it could not move the molten metal from the premises unless it solidified and cooled it by casting it into pigs. Appellant sought to show that its total loss and expense of removal would amount to about $28,000. The trial court also excluded this evidence. Appellant claims that the court erred in said rulings.

Appellant also claimed the right to prove the amount of its business loss from the "interruption" of its business as a result of the taking. The offer of this proof was also rejected by the court and appellant claims this was error.

The trial resulted in an award of $140,000 for the land and buildings. Appellant concedes that this was within the range of the testimony and has not appealed from such award. The testimony as to the cost of moving appellant's machinery and fixtures ranged from $60,577.85 (the total given by the city witnesses) to $212,176.11 (the total given by appellant's witnesses, not counting the proofs offered but rejected). The jury awarded $85,000 for fixture removal. United Platers, Inc., as the owner of the fixtures and operator of the business, has appealed from that award. It claims error in the exclusion of its offered proofs as to the solutions and melted metal, and as to "business interruption."

1. When a condemnation jury is to reflect in its award the cost of the removal of trade fixtures, should the jury consider the cost of removing the chemical solutions in the tanks of a plating company, and the cost of removing the molten metal in its furnaces?

The trial judge agreed that appellant's tanks, pipes and other machinery were trade fixtures and permitted the jury to hear evidence as to the cost of disassembling ·and reinstalling the movable equipment, and as to the value of equipment which could not be moved without destruction or at cost exceeding value. After refusing to allow appellant to show the removal expense for the chemical solutions and molten metal, the court instructed the jury:

"As to those fixtures which the owner elects to take, the owner is entitled to just compensation. * * * Therefore, in considering the damages to be awarded for fixtures, as I have defined them, you

may consider the value of the fixtures to have been decreased to the extent of the cost of detaching them and reattaching them elsewhere, and you should make an allowance in your award by such an amount as representing the damage to such respondents claiming compensation for the diminished value of their fixtures. You are not, however, to add the costs of transporting severed trade fixtures to a new location, as such costs are considered too speculative."

Appellant claims that because of the nature of this particular business, there is great expense connected with the moving of the chemical solutions and the white-hot molten metal, and that this is part of the expense of moving its trade fixtures. The trial judge held against this contention, saying:

"The cases are anything but clear in my humble opinion, but I have found no case that has gone so far as condemnation which are not attached to the realty itself and therefore I am going to rule that the jury will not be permitted to give a verdict as far as on behalf of the United Platers, Inc., as far as the liquids are concerned or the lead either as to damage, the cost of removal."

Thereupon the court charged the jury that:

"Fixtures, in this case, mean such articles of personal property which are attached in some manner or means to the land or building, and can be removed without seriously damaging the premises, and includes machinery and equipment. It does not include unattached personal property or stocks of merchandise."

The question here for decision is whether the chemical solutions and molten metal are to be considered in a condemnation proceeding as trade fixtures, under the circumstances of this case. If so considered, appellant is entitled to have the loss and removal expense considered as a part of its dam-

ages for the taking. On the other hand, if, under these circumstances, the solutions and molten metal are merely personal property, not trade fixtures, the trial court was not in error in excluding the proffered testimony. Counsel for the city claims that:

"The solutions and molten metal are not fixtures, either actually or constructively, for the reason that they cannot 'be properly considered as part of the realty' as above defined. * * * They are personal property for the removal of which, in condemnation proceedings, no damages are allowable."

Counsel for both parties rely on *In re Widening of Gratiot Avenue, East Grand Boulevard to Townsend,* 294 Mich 569. In that case, at p 573, the Court said:

"The sole question on this appeal is whether it was proper for the jury to award damages for removal costs of trade fixtures.

"Article 13, § 1, of the Constitution of Michigan (1908) provides:

" 'Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.'

"This provision has been given a liberal interpretation in this State. 'Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred.' *In re Widening of Bagley Avenue,* 248 Mich 1."

The Court then concluded (syllabus):

"Trade fixtures used in conduct of drug store, jewelry store, and gear manufacturing business were not stocks of goods nor, usually considered, purely personal property, and while considered personal

property as between landlord and tenant, in condemnation proceedings they were properly considered as realty and damages were allowable for removal costs (Const 1908, art 13, § 1)."

Thus we have in this State a constitutional guarantee that private property will not be taken for public use without just compensation. In 1886, this Court upheld what might be considered as consequential damages in a condemnation case in which a highway commissioner pursued condemnation proceedings to lay out a highway across the plaintiff's railroad. The Court allowed damages to the railroad company for the expense of "fencing, cattle-guards, and other outlays to complete the approaches, besides the cost of maintaining them." In so holding, the Court said:

"The damage to a railroad company by running a highway across it does not spring, to any considerable extent, from the mere fact of crossing, but from the additional outlay required in avoiding the perils of a crossing. * * * The Constitution expressly forbids any appropriation of private property without 'just compensation.' There is no power in the legislature to create any exception to this rule, and nothing is just compensation which does not make good all the pecuniary loss or outlay occasioned to the owner by the appropriation of his property." *Chicago & Grand Trunk R. Co.* v. *Hough,* 61 Mich 507.

While so-called consequential damages are allowable under some circumstances (*In re Widening of Bagley Avenue,* 248 Mich 1; *In re Widening of Michigan Avenue, Roosevelt to Livernois,* 280 Mich 539; *In re Widening of Michigan Avenue, Fourteenth to Vinewood,* 298 Mich 614), it does not necessarily follow that such damages are invariably allowable under all conditions in the taking of private property for public use. See *In re Petition of State*

*Highway Commissioner,* 326 Mich 183; *In re Slum
Clearance Between Hastings, Gratiot, De Quindre
and Mullett Streets, supra.*

In the instant case the chemical solutions and
molten metal were not actually annexed or affixed to
the real estate so as to become a physical part of it.
Obviously, that would not be possible. But we do
not agree with the city that such actual physical an-
nexation is a prerequisite to considering the re-
moval of the solutions and molten metal in deter-
mining damages for the taking of the real estate and
trade fixtures. Obviously, the tanks, if empty, as
well as much of the other trade fixtures used by
appellant in its business would be valueless to it
without the solutions and the molten metal. Their
removal would be as essential to appellant's busi-
ness as the removal of the tanks. Under the cir-
cumstances of this case, they must be considered as
trade fixtures, constructively annexed to the real
estate.

"The ammonia compressors, aerating equipment,
boilers, motors and refrigerating units, freezing
tanks, air compressors, condensers, engines, oil
tanks and pumps, platform scales, scorching ma-
chines, and other machinery for manufacturing ice
are fixtures. See *Dehring* v. *Beck,* 146 Mich 706;
*Lyle* v. *Palmer,* 42 Mich 314; *Tyler* v. *Hayward,* 235
Mich 674; *Peninsular Stove Co.* v. *Young,* 247 Mich
580; *Kent Storage Co.* v. *Grand Rapids Lumber Co.,*
239 Mich 161; *First Mortgage Bond Co.* v. *London,*
259 Mich 688. We believe that this should also in-
clude spare motors, parts, machinery, equipment, et
cetera, which constitute replacements specially
adapted to the full enjoyment of the realty. See
*Voorhis* v. *Freeman,* 2 Watts & Sergeant's Rep (Pa)
116 (37 Am Dec 490)." *Detroit Trust Co.* v. *Detroit
City Service Co.,* 262 Mich 14, 29.

"The test of what are fixtures was given in *Penin-
sular Stove Co.* v. *Young,* 247 Mich 580, at 582:

" 'What are fixtures and become part of the realty
was considered at length in *Morris* v. *Alexander,* 208
Mich 387. This Court there approved of the 3 gen-
eral tests which may be applied as stated in 11 RCL,
p 1059. These are, "first, annexation to the realty,
either actual or constructive; second, adaptation or
application to the use or purpose to which that part
of the realty to which it is connected is appropri-
ated; and third, intention to make the article a per-
manent accession to the freehold." In applying
these tests, consideration must be given to the nature
of the structure and the use to which it was to be put
when completed.'

"In *Detroit Trust Co.* v. *Detroit City Service Co.,*
262 Mich 14, at page 30, the Court said:

" 'In distinguishing between what is a fixture and
what a chattel, when neither is annexed to the free-
hold, the use, nature and intention of the parties
must be considered.'

"Under this theory we hold that it was the in-
tention of the Lafayette company when they pur-
chased such articles as repair parts to elevator
switchboard, elevator rugs, window shades, awnings,
double doors and trim, base and shoe, red gum par-
titions, storm doors, elevator uniforms, window cur-
tains, rubber matting, entrance mats, chain falls,
Minneapolis thermostats and clock, wall case and
mirror, pump tanks for elevator, to consider such
articles as fixtures and improvements." *Colton* v.
*Michigan Lafayette Building Co.,* 267 Mich 122.

Under the circumstances of the instant case, the
solutions and molten metal are trade fixtures, in the
same category as the accessories and spare parts
usable in connection with machinery but not actually
affixed to the machinery or a part of land and build-
ings. The tanks are admittedly trade fixtures, but
without the solutions they will not plate anything.
The solutions are useless except for use in the plat-
ing tanks. They are used only in connection with
the tanks, they are expressly made for the purpose

and they are essential to the plating operation. The solutions are not sold and are not stocks of merchandise. We consider these solutions are analogous to the detached special parts of, or special tools for, a machine and like the machine (the tanks, in this instance) are constructively annexed to the freehold, and a part of the owner's trade fixtures. The same applies to the contents of the melting pots.. This liquid metal is used only as part of the plating operation and is a trade fixture. Appellant should have been allowed to have the jury consider the evidence of loss or moving expense as a part of appellant's proof of damages for the taking.

2. Should the court have received and allowed the jury to consider proof of business loss that with reasonable certainty would result from "interruption" of appellant's business?

It is true that an owner would be entitled to compensation for "interruption of business" under some circumstances. It has been so held where leasehold interests were taken, and where only a part of the land and building was taken. Where there is a partial taking, and there is an interruption of business, or when the remaining part is of great value and can be rearranged, the cost of altering the building and all consequential damages reasonably flowing from the interruption of business may be considered in awarding compensation. *Grand Rapids & Indiana R. Co.* v. *Weiden,* 70 Mich 390; *Commissioners of Parks & Boulevards of City of Detroit* v. *Moesta,* 91 Mich 149; *City of Detroit* v. *C. H. Little Co.,* 146 Mich 373; *In re Widening of Bagley Avenue, supra.*

The precise nature of the damages which appellant sought for "interruption of business" is shown in the record by appellant's offer of proofs, in the absence of the jury. It was for *loss of profits* due

to interruption of business. Appellant's counsel stated to the court:

"On behalf of the respondents on parcels 90, 91 and 92 I make the following offer: * * * We would also show by Mr. Friedt that these respondents have made all possible attempts to mitigate the damages by seeking to buy or to rent some existing building in which they can carry on their business but they find no such building available except buildings which would have to be remodeled at such expense that it would be cheaper to construct a new building; that during the time of constructing such building and of transporting their business to it, from the premises being condemned, their business will necessarily be interrupted and will be unable to yield any profit and that the period of such complete interruption of the business will be at least 1 year. We further offer to prove by the continued examination of Mr. Friedt by calling Mr. Herbert M. Ferry, a certified public accountant, that the profits of this business during the past 5 years have averaged $14,000 a month, that the quantity of orders on hand, of raw materials on hand, et cetera, is such that the business will be able for a period of at least 1 year to continue to operate at a profit of $14,000 per month were it not necessary to interrupt business in the event that this property is condemned and we are prepared to show with reasonable certainty that the profits and loss during the period of interruption of the business will be not less than $14,000 per month."

The court was not in error in refusing to allow the jury to consider loss of profits as the "interruption of business" in determining compensation. Loss of profits is speculative, and not a proper element of pecuniary loss or outlay.

"In a condemnation proceeding, the general rule as to damages for the taking of an entire leasehold interest is the fair market value of the lease. Loss of profits and injury to business are not recoverable.

Lewis on Eminent Domain (2d ed), § 487; cases cited in note, p 869, Ann Cas 1918B, 869.

"In Michigan, this Court has held that the owner of property taken may recover for interruption of business, but it has not gone so far as to hold that where his entire estate is taken he may recover for loss of future profits as a substantive element of damage. *Grand Rapids & Indiana R. Co.* v. *Weiden*, 70 Mich 390; *City of Detroit* v. *C. H. Little Co.*, 146 Mich 373." *In re Park Site on Private Claim 16, City of Detroit*, 247 Mich 1.

Plaintiff's offer of proofs as to the loss of chemical solutions and expense of removal did not reach the consideration of the jury, having been excluded by the court. Counsel for the city point out that because of the court's ruling there was no testimony contradicting the offered proofs and no cross-examination of witnesses. Counsel also point to other testimony that most or all of the cost of moving the solutions could be avoided by allowing appellant sufficient time to establish another plant, and that appellant has been occupying the property over 1-1/2 years on a rental basis since the city had acquired title and right to possession. Under these circumstances, the case must and will be remanded for the taking of further testimony and a determination and award of further damages to appellant in accordance with the foregoing conclusions. Costs to appellant.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.

DETHMERS, J., concurred in the result.