*In re* ACQUISITION OF LAND FOR CIVIC CENTER.

CITY OF DETROIT *v.* DETROIT & CLEVELAND
NAVIGATION COMPANY.

1. EMINENT DOMAIN—AWARD—EVIDENCE—SUPREME COURT.

A jury's award in condemnation proceedings may not be disturbed by the Supreme Court unless palpably contrary to the evidence, the province of the Court being to review the evidence to see that the finding is supported thereby.

2. SAME—CONDEMNATION PROCEEDINGS—FUNCTION OF JURY—CREDIBILITY OF WITNESSES.

The jury in a condemnation case is the judge of the credibility of the witnesses and the truthfulness of their statements.

3. SAME—CONDEMNATION PROCEEDINGS—FUNCTION OF JURY—DAMAGES.

The jury in a condemnation case hears the testimony, examines

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] Generally as to province of jury in condemnation case,. see 18 Am Jur, Eminent Domain §§ 360–362.

[6] 18 Am Jur, Eminent Domain § 252.

[7, 8] 18 Am Jur, Eminent Domain § 253.

[7, 8] Eminent Domain: Valuation of land and improvements and fixtures thereon separately or as unit. 1 ALR2d 878.

[7–9] Compensation in eminent domain in respect of fixtures or chattels used in connection with real property taken or damaged. 90 ALR 159.

[9] 18 Am Jur, Eminent Domain § 255.

[10] 18 Am Jur, Eminent Domain, § 351.

[10] Price at which one whose land is taken or damaged under power of eminent domain has sold, contracted to sell, or optioned land in question to third person as evidence of its market value in condemnation proceeding or related action. for damages. 155 ALR 262.

[11] 18 Am Jur, Eminent Domain § 344.

[11] Income as an element in determining value of property taken in eminent domain. 65 ALR 455.

the property, considers the estimates placed upon the damages which should be awarded to the respective parties and makes a final determination.

4. SAME—AWARD—EVIDENCE.

An award made by the jury in condemnation proceedings within the minimum and maximum amounts of damages, as disclosed by the record, is supported by the evidence.

5. SAME—CONDEMNATION PROCEEDINGS—AWARD—WHOLE OF WATER-FRONT PARCEL—SUBMERGED LAND.

An award of damages in condemnation proceedings for the whole of water-front parcels of land, between the minimum and maximum amounts of damages as estimated by witnesses for the respective parties, did not deprive the owners of just compensation by failure to specify in the award any sum for submerged portions, where the jury was not asked or required to determine the value of the submerged lands, separate from the dry land, and instructions to jury were to return an award reflecting the value of the parcels as a whole.

6. SAME—AWARD—WATER FRONT—WHARFAGE RIGHTS—REQUEST FOR SEPARATE ITEMS.

Water-front property owners whose lands were taken in condemnation proceedings may not complain on appeal that award made no specific provision for various items of damage, such as value of wharfage rights, where no request had been made for a separate item in respect thereto and testimony of an appraiser specifically mentioned such rights as included in his lump sum figures.

7. SAME—AWARD—TRADE FIXTURES.

Property owner on whose land is located trade fixtures is entitled to have the loss and removal expense considered as a part of its damages for the taking in condemnation proceedings.

8. SAME—ANNEXATION OF TRADE FIXTURES—TESTS APPLICABLE.

The 3 tests applicable in determining whether or not property may be termed trade fixtures in condemnation proceedings in a particular case are (1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) the intention to make the article a permanent accession to the freehold.

9. Same—Water Front—Trade Fixtures—Moored Vessels—Evidence.

Refusal of court to allow evidence of the cost of moving vessels, moored at wharfs located on water-front property being condemned, to be presented to jury was not error, where it does not appear that there had been any intention of their owner to make the vessels a permanent accession to the freehold.

10. Same—Value—Evidence—Specific Sales of Other Property.

Specific sales of property of similar character may be employed by a witness in forming an opinion of the value of other lands equally circumstanced, but other specific sales of similar land and prices paid therefor may not be introduced as substantial evidence of the value of a particular parcel taken in condemnation proceedings.

11. Same—Rents on Adjoining Parcel.

Court was not in error in ruling that defendant property owner might not introduce testimony in condemnation proceedings as to rent which plaintiff city asked for adjoining parcel unless the city be permitted to show what defendant offered to pay, there being no agreed rental.

Appeal from Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted October 9, 1952. (Docket No. 32, Calendar No. 45,588.) Decided January 5, 1953.

Condemnation proceedings by the City of Detroit to establish a civic center. Jury returned verdict of necessity and set value for various parcels condemned. Detroit & Cleveland Navigation Company appeals. Affirmed.

*Paul T. Dwyer*, Acting Corporation Counsel, and *Bert R. Sogge*, Assistant Corporation Counsel, for plaintiff.

*Walter M. Nelson* and *John A. Hamilton*, for defendant.

Sharpe, J. This case involves the amount of a jury's award in a condemnation proceeding brought by the city of Detroit for the acquisition of 2 parcels of land belonging to Detroit & Cleveland Navigation Company. Both parcels, 1 and 9, include portions submerged by water. The purposes of the condemnation proceedings are to establish a civic center, as well as for other municipal purposes. Parcel 1 runs from Cass avenue, if extended, to First street. Parcel 9 runs from Second avenue to Third street. Both parcels of land have river frontage. Parcel 1 has a total area of 130,121 square feet with 111,709 square feet of dry area and 18,412 of submerged land.

Parcel 9 has a total area of 74,948 square feet with 54,116 square feet of dry area and 20,832 square feet of submerged land.

When the cause came on for trial, 2 appraisers for the city of Detroit placed a valuation on parcel 1 in the amount of $391,000. They arrived at this amount by placing a valuation of $3.50 per square foot for the dry area and no value on the submerged area. Three appraisers for Detroit & Cleveland Navigation Company placed valuations of $806,048, $827,200 and $790,550. All 3 of these appraisers arrived at these figures by including a valuation of $5.50 per square foot for the dry area and $3, $4 and $5.50 per square foot for the submerged area.

The two appraisers for the city of Detroit appraised parcel 9 in the amount of $300,000. They arrived at this amount by including a valuation of $3.50 per square foot for the dry area and no value for the submerged area. The 3 appraisers for Detroit & Cleveland Navigation Company placed valuations of $603,851, $584,300 and $567,000. They arrived at these amounts by including a valuation of $5, $5 and $4.50 per square foot for the dry area and $3, $5 and $4.50 per square foot for the sub-

merged area. The trial court gave the following instructions to the jury:

"The jury of freeholders passes upon 2 questions: The first is the question of public necessity, and if that is answered in the affirmative—that is, that the proposed improvement is a public necessity—then the next question for the determination of such jury is the question of compensation. Those are the 2 things which are provided for. * * *

"So one of your big jobs, if you find necessity, is to determine the value of parcels 1 and 9. * * *

"Value is a very illusive thing. You know that as well as I do. It is a difficult thing to determine. It is determined by a multitude of considerations which enter into every particular lawsuit.

"In the first place, the respondents are entitled to be fairly and adequately awarded compensation for the present value of their property; that is the value as of the time of the taking is the measure of damages that they are entitled to; they are entitled to a fair value of their property as of the time that the property is taken from them. * * *

"Next, the respondents are entitled to be compensated for their property for the present greatest and best use to which the property may presently be put; that is to say, the use to which it may presently be put is the fair value. In other words, that would eliminate any future speculative increase or decrease in value of property; and the use to which it may presently be put is an important thing—the greatest and best use to which they presently may put the property. * * *

"Further, I am asked to charge you and do charge you that in the case of the Detroit & Cleveland Navigation Company, they are entitled to have you consider whether or not the wharfs, docks and other improvements erected by them on the land are such as tend to increase the market value of the land. If you find such wharfs, docks and other improvements do in fact tend to increase the market value

of the land, then, in your verdict, you are bound
to give them just compensation therefor.   *   *   *

"However, where there is a contest, then you have
a wide latitude.  You may bring in the low figure,
the high figure, or you may bring in a verdict in
between those 2.  That is, the only restriction upon
your power is to bring in either the high or the low
figure or any figure between those 2."

The jury returned a verdict of necessity and
awarded damages in the amount of $450,000 for
parcel 1.  We note that the highest appraised value
of parcel 1 was the sum of $827,200, and the lowest
appraised value was the sum of $391,000.  The
award for parcel 9 was the sum of $345,000.  We
also note that the highest appraised value of parcel
9 was the sum of $603,851, and the lowest appraised
value was the sum of $300,000.  It clearly appears
that the award in each case was in between the
highest and lowest appraised values.

*In re Widening of Michigan Avenue, Roosevelt to
Livernois,* 280 Mich 539, we said:

"With respect to the damages awarded in con-
demnation proceedings, it is not within the province
of the court to review the question further than to
see that the finding is supported by the evidence.
*Boyne City, G. & A. R. Co.* v. *Anderson,* 146 Mich
328 (8 LRA NS 306, 10 Ann Cas 283, 117 Am St
Rep 642).  If the jury's award is within the evidence,
it may not be disturbed on appeal.  *In re Petition
of the City of Detroit for a Park Site,* 227 Mich 132.
The proceedings before this Court to review an award
on condemnation is in the nature of certiorari and
the award of damages should not be disturbed unless
palpably contrary to the evidence.  *Flint & P. M.
R. Co.* v. *Detroit & B. C. R. Co.,* 64 Mich 350.   *   *   *

"The jury in a condemnation case is, as in other
cases, the judge of the credibility of the witnesses
and the truthfulness of their statements.  The jurors

hear the testimony, examine the property, consider the estimates placed upon the damages which should be awarded to the respective parties, and make a final determination. Like any other tribunal which is created for the determination of disputed questions of fact, their determination is final and this Court may not disturb it so long as it is within the fair range of the testimony and of the facts which the jury may have learned in their examination of the property."

*In re Widening of Michigan Avenue, Fourteenth to Vinewood,* 298 Mich 614, we said:

"The award made by the jury was within the minimum and maximum amounts of damages as disclosed by the record, and the findings of the jury are supported by the evidence."

Appellant urges that the failure of the jury to award any sum for the 39,244 square feet of submerged land on parcels 1 and 9 deprived them of just compensation. We note that the jury was not asked or required to determine the value of the submerged lands, separate from the dry land, but were required to make an award for all of parcel 1 and parcel 9.

*In re Widening of Bagley Avenue,* 248 Mich 1, we said:

"Where the whole of a parcel of land is taken, the compensation to be made is the fair value of the land so taken."

In the instant case the city of Detroit instituted proceedings to condemn the whole of parcels 1 and 9. It is the general rule that where fixtures, improvements and mineral deposits are involved, they are valued together with the land as a whole. See 156 ALR 1416. The instructions given the jury were to return an award reflecting the value of

each parcel as a whole. In *Department of Conservation* v. *Connor,* 316 Mich 565, we said:

"Defendants now complain that the verdict of the jury was fatally defective because it did not set forth the separate items of damages claimed by defendants, but only designated a lump sum as compensation. They do not point to any statute that necessitates such itemization. The record does not show that in proposing the form of the verdict defendants requested any findings as to separate items of compensation. The objection, if it had any merit, comes too late."

In the case at bar there were no objections made to the instructions given to the jury, who were instructed to make separate awards for each parcel. The award of the jury was within the fair range of the evidence. In such cases we do not review such award, other than to determine that it is supported by evidence. Under the facts and circumstances in this case, the Detroit & Cleveland Navigation Company may not complain because the jury did not determine the value of the dry land separate from the submerged lands. Their duty was to bring in an award for each parcel as a whole.

Appellant also urges that the failure of the jury to award damages for the wharfage rights on First, Second and Third streets deprived it of just compensation as required by the Constitutions of Michigan and the United States. We note that Sheldon Drennan, an appraiser for the city of Detroit testified:

"We did consider wharfage rights of tying at the foot of these streets. We have considered the fact that there are such wharfage rights, and that the D. & C. apparently has had the right to tie their ships so that they overlap the foot of the streets. In fact, the Bob-Lo boats do the same thing at the foot of Woodward avenue. That has been common

practice, to my knowledge, on the water front for many years.

"*Q.* Well, now, your answer is that you have intended by the figures given, to cover and include the wharfage rights of the Detroit & Cleveland Navigation Company, as a grantee of parcels 1 and 9, their wharfage rights at the foot of these streets? You intended to that; is that right?

"*A.* That is correct.

"*Q.* Then the next question obviously is, Mr. Drennan, have you in mind a figure reflecting the right and interest of the Detroit & Cleveland Navigation Company in the wharfage rights at the foot of First street?

"*A.* Not as a specific amount, no. The same applies to the foot of Second and Third."

It clearly appears that the appraiser in making his appraisal included the value of the wharfage rights in his lump sum figures for parcels 1 and 9. The minimum value for such rights was placed at $1,500 for each street or a total of $4,500 by appraisers for Detroit & Cleveland Navigation Company. Since the award granted is in a lump sum, we are unable to say that the evidence given by the Detroit & Cleveland Navigation Company appraisers was not considered by the jury. In the case at bar, there was no request made for a separate item in respect to these wharfage rights. It is too late upon appeal to make an issue of this item.

It is also urged that the court was in error in refusing to allow evidence of the expense of moving 4 passenger vessels from parcels 1 and 9. We note that a special record was made, and testimony offered and received showing that the cost of removal of these vessels was $59,300 if removed by tug boats, and $121,118 if removed by their own power. Whether appellant is entitled to removal damages for its 4 vessels depends upon whether

these vessels are fixtures or personal property.  *In re Slum Clearance Between Hastings, De Quindre, Mullett Streets and Gratiot Avenue,* 332 Mich 485, we clearly stated the rule for damages if the property was a trade fixture or personal property.  We there said:

"The question here for decision is whether the chemical solutions and molten metal are to be considered in a condemnation proceeding as trade fixtures, under the circumstances of this case.  If so considered, appellant is entitled to have the loss and removal expense considered as a part of its damages for the taking.  On the other hand, if under these circumstances, the solutions and molten metal are merely personal property, not trade fixtures, the trial court was not in error in excluding the proffered testimony."

The rule as to when property is a trade fixture or personal property is well stated in *Morris* v. *Alexander,* 208 Mich 387:

"This has led to the formulation and recognition of 3 general tests which may be applied in determining a particular case, namely, first, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold."

See, also, *Peninsular Stove Co.* v. *Young,* 247 Mich 580, and *In re Widening of Gratiot Avenue, East Grand Boulevard to Townsend,* 294 Mich 569.

No showing has been made that the vessels were moored at the docks on the condemned parcels with any intention of making them permanent accessions to the freehold.  It may be assumed that they were moored there with the intention of storing them until such time as they would be put back in use, sold or

disposed of in some way. It clearly appears that the vessels fail to meet the test, namely, the intention of the Detroit & Cleveland Navigation Company to make the vessels a permanent accession to the freehold. The court was not in error in refusing to allow evidence of the cost of moving the vessels.

It is also urged that the trial court was in error in refusing to allow appellant to introduce evidence of the rental value charged by the city of Detroit for property immediately joining parcel 1 in determining the value of parcels 1 and 9 herein involved.

It appears that the city of Detroit is the owner of the property immediately joining parcel 1 on the east. This property was acquired by the city of Detroit in a condemnation proceedings of property formerly owned by appellant. After the city acquired the property, appellant continued in possession, and negotiations were had to determine a fair rental value. No agreement was ever reached and the city began an action to collect rental. Appellant offered to show the amount of rent asked by the city of Detroit. The trial court refused to permit this evidence to be introduced, unless the city of Detroit be permitted to show what the Detroit & Cleveland Navigation Company offered to pay in rent.

Appellants rely on *Commission of Conservation of Department of Conservation* v. *Hane,* 248 Mich 473, 477, where we said:

"We hold that knowledge of specific sales of property of similar character may be employed by a witness in forming an opinion of the value of other lands equally circumstanced, but other specific sales of similar land and prices paid therefor may not be introduced as substantive evidence of the value of a particular parcel."

Had the parties arrived at an agreed rental, we think it would have been admissible under the above authority, but in the absence of an agreed rental, we do not find that the trial court was in error in ruling as it did. We find no reversible error, and the action had in the circuit court is affirmed, with costs against appellant.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.