CITY OF MUSKEGON v BERGLUND FOOD STORES, INC.

1. EMINENT DOMAIN—VALUE—COMPENSATION—EVIDENCE—TAX AS-
   SESSMENTS—ADMISSIONS AGAINST INTEREST.

   The amount property was assessed at for purposes of taxation, an
   analysis of the assessment as it related to equalized value, and
   eventually the ultimate value of the realty as so computed,
   were admissible into evidence at a trial to determine just
   compensation in eminent domain proceedings where a city
   made the assessment and was a party to the litigation; the
   valuation placed by the city on the property in question was in
   the nature of an admission against interest, and the analysis
   made meaningful to the jury the value which the condemnor
   had in fact placed upon the property for tax purposes.

2. EMINENT DOMAIN—VALUE—EVIDENCE—DISCRETION.

   The determination of value in condemnation proceedings is not a
   matter of formula or artificial rules but of sound judgment and
   discretion based upon a consideration of all relevant facts in a
   particular case.

3. EMINENT DOMAIN—COMPENSATION—LEASEHOLD—BANKRUPTCY—
   STATUTES.

   Rights of condemnee parties are fixed the date that "just compen-
   sation" for property being condemned was deposited by the
   condemning agency pursuant to statute; on that day, the con-
   demning authority secured its right to possession and the
   owners and tenants or their successors including the successor
   in reorganization because of later proceedings in bankruptcy
   court were vested with the right to the just compensation
   (MCLA 213.369).

4. EMINENT DOMAIN—COMPENSATION APPORTIONMENT—APPEAL AND
   ERROR.

   An appellate court will not amend a condemnation award which

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Eminent Domain § 441.
[2] 27 Am Jur 2d, Eminent Domain § 266 *et seq.*
[3] 26 Am Jur 2d, Eminent Domain § 87.
[4] 27 Am Jur 2d, Eminent Domain §§ 446, 447.
[5] 27 Am Jur 2d, Eminent Domain § 297.

apportioned the compensation between two parties where different theories of apportionment exist and a jury had different theories representing different amounts of valuation and where its determination was within the maximum and minimum amounts.

5. EMINENT DOMAIN—COMPENSATION—INTEREST—STATUTES.

Interest on any increase in the ultimate award for condemned property over the statutory advance tendered at the time of taking is to be computed from the date fixed for transfer of actual possession of the premises to the date of payment (MCLA 213.381).

Appeal from Muskegon, James F. Schoener, J. Submitted Division 3 May 10, 1973, at Grand Rapids. (Docket No. 14188.) Decided October 31, 1973.

Petition by the City of Muskegon for condemnation of property owned by Berglund Food Stores, Inc., and leased by J & R Motor Supply Corporation and others. The City of Muskegon appeals from a jury verdict awarding compensation to defendants. Berglund Food Stores, Inc., and J & R Motor Supply Corporation cross appeal. Affirmed as modified.

*Thomas J. O'Toole,* for plaintiff.

*Warner, Norcross & Judd* (by *John H. Logie*), for defendant Berglund Food Stores, Inc.

*Parmenter, Forsythe & Rude* (by *John M. Briggs, III*), for defendant J & R Motor Supply Corporation.

Before: DANHOF, P. J., and McGREGOR and MILES,* JJ.

MILES, J. These are condemnation proceedings

* Circuit judge, sitting on the Court of Appeals by assignment.

brought by plaintiff-appellant City of Muskegon to acquire properties of respondents and others for use in a downtown urban renewal project. The case has been in an almost constant state of litigation since the city executed and filed its notice of taking and statement of estimated compensation on December 15, 1969 (MCLA 213.361 *et seq.;* MSA 8.261[1] *et seq.).*

The real estate involved was owned by respondent Berglund Food Stores, Inc., a portion of which had been leased to respondent J & R Motor Supply Corp. on a ten-year lease with an option to renew in 1957. In the state of the hearings relating to the litigated issue of necessity, Berglund contested and took an appeal to this Court which was subsequently abandoned. In July, 1970, the city had deposited an amount of money to cover just compensation requirements but J & R received no part of such award. J & R did continue to occupy its leased premises, paying rent both before and after March 4, 1970, at which time it had filed a petition for corporate reorganization under chapter 10 of the Bankruptcy Act (11 USCA 501 *et seq.).* The appointed trustee tendered and Berglund accepted such rental payments until J & R vacated in November, 1970. On February 22, 1971, J & R gave notice of its intent to claim a leasehold interest in the condemnation proceedings. The reorganization proceedings pursuant to chapter 10 were still pending at the time of jury trial which took place in April, 1972.

A trial before a jury was held to assess just compensation and it awarded the sum of $175,000 and determined that the sum of $5,000 should be apportioned to J & R for the taking of its economic leasehold.

After the jury returned its verdict, J & R moved

for allowance of interest at the rate of 7% per annum on the amount awarded for its economic leasehold, and a stipulated award for unamortized capital improvements and interest thereon in a like amount. The trial court allowed interest at 5% per annum.

A judgment was entered in accordance with the verdict on April 28, 1972.

The city filed its appeal from judgment on May 5, 1972, claiming improper introduction of testimony. Berglund raised a cross appeal, claiming the entire award. J & R filed its motion for a new trial or judgment notwithstanding the verdict on May 18, 1972. The trial judge declined to rule on the latter motion, holding that the city's appeal divested that court of jurisdiction. J & R cross appealed against Berglund on May 25, 1972.

Various issues are raised on the several appeals which merit the consideration of this Court.

*First:* Did the trial court err in permitting evidence of the tax assessment of the respondents' land and in permitting testimony explaining the assessment?

During the course of the trial, respondent Berglund called the assessor for the City of Muskegon to testify and his testimony and several exhibits were all received over the city's objections. The assessor testified to the city's 1969 assessed valuation of Berglund's property (without objection); a 1964–65 appraisal of Berglund's properties by an independent company, all part of his (assessor's) records; the fact that the city's 1969 assessed valuation was equalized by county and state equalization to a factor of 1.10 and that in arriving at a state equalized valuation, the city's assessed valuation should be multiplied by that factor for a product of $88,550; and that to arrive at "true

cash value" such figure would be doubled to $177,-100. All analyses and computations made implementing the bare assessment were objected to.

The evidence supports the city's contention that the city assessor did not himself set the 1969 assessed valuation and that county and state equalization factors were the result of the county's studies of residential property sales in the City of Muskegon.

The trial judge permitted assessment value with the statement, "the basis of the assessment is some evidence to allow it to go before the jury". The city challenges the receipt of the evidence for three reasons:

(1) That it is not one of the regularly accepted methods of appraisal;

(2) That the bases of valuation for tax purposes and for condemnation are not the same;

(3) That tax assessments are notoriously behind and therefore because they are not up to date, they cannot be a reliable indicator of value.

There is legitimacy to each of the arguments referred to above. A careful appraiser considers, accepts, or rejects the utilization of approaches to value and is therefore far more likely to produce a fair "market value" than wholesale estimates generally found in assessments. 44 Journal of Urban Law 185 (1966).

Property owners prefer low assessment rates for tax purposes and a high evaluation for condemnation purposes. Those involved in eminent domain cases are aware that seldom, if ever, are assessments current.

A majority of our state courts reject the admission of tax assessments as evidence of value of property taken, 39 ALR2d 205; 5 Nichols on Eminent Domain (3d ed), § 22.1, pp 22-6, 22-7. Michi-

gan does not follow the majority view. This panel has been urged by appellant's able counsel to change the Michigan-minority position. There may be merit to his plea. It should be borne in mind that the rationale of the members of the Supreme Court in admitting assessed valuation was set forth in *In re Memorial Hall Site,* 316 Mich 215, 220; 25 NW2d 174, 176 (1946):

"Greater latitude is allowed in permitting the reception of evidence bearing upon the value of property than is permitted in the ordinary case tried before a judge and jury."

This Court is not disposed to reject the clear holding of our Supreme Court in the companion cases of *In re Memorial Hall Site (Detroit v Cristy),* 316 Mich 215; 25 NW2d 174 (1946), and *In re Memorial Hall Site (Detroit v Ehinger),* 316 Mich 360; 25 NW2d 516 (1947).

Further, it appears to this Court that when the rationale of the two above-cited cases is used as guide point, there is a valid reason for its acceptance.

It should be recognized that in both *Memorial Hall* cases "the city made the assessment and is a party to the litigation", p 220; 25 NW2d at 176 *(Cristy).* As we understand the thrust of the *Memorial Hall* cases, it is contained in Justice BOYLE's statement, p 362; 25 NW2d at 517 *(Ehinger):*

"When offered by the defendants in condemnation proceedings, the assessed valuation for the current year placed by the city on the property in question is in the nature of an admission against interest."

It would seem, therefore, that when the *application* of the *Memorial Hall* cases is contained within original parameters of its intendment, its

use is proper. That the principle is abused and misused in litigation in highway and utility condemnations is a notoriously well known fact to the trial bench and the legal profession alike. Thus, while a plea for containment may be in order, this Court is not disposed to reject the principle, albeit a minority view.

At the trial, the city's counsel further objected to analysis of the assessment as it related to equalized value, and eventually the ultimate value of the realty as so computed. We see no error in this process as it only makes meaningful to the jury the value which the condemnor has in fact placed upon the property for tax purposes. Stated otherwise, it is the adjusted assessment upon which the city relied to collect its share of the tax burden.

Further, as expressed by Justice SHARPE in *Memorial Hall (Cristy),* such evidence "may be considered in connection with all other evidence" (p 220; 25 NW2d at 176).

Although having in mind the more formalized approach to eminent domain proceedings than previously permitted by our Supreme Court, we comprehend no reason for abandoning the oft-repeated principle:

"that the determination of value in condemnation proceedings is not a matter of formula or artificial rules but of sound judgment and discretion based upon a consideration of all relevant facts in a particular case." (Justice KELLY in *In re Grand Haven Highway,* 357 Mich 20, 28–29; 97 NW2d 748, 752 [1959]).

Other valid evidence consisted of the estimations of value by recognized and admittedly qualified appraisers. The city's appraiser found the highest and best use of the property to be for retail stores

and concluded that fair compensation would be $133,500. The owner of the property testified at length from rental histories and concluded it had a fair market value of $225,112. The professional appraiser, secured by the owner of the property, developed his findings in accordance with recognized and acceptable methods of appraisal practice and reported a cost approach value of $176,000, an income approach value of $173,600, and a market approach value of $175,000. His final conclusion was that the fair market value on the date of taking was $175,000.

The jury's award of $175,000 was thus clearly within the minimum and maximum claims of value and therefore acceptable. *In re Acquisition of Land For Civic Center,* 335 Mich 528; 56 NW2d 375 (1953).

*Second:* Did J & R Motor Supply Corporation's petition for reorganization filed March 4, 1970, terminate the lease between J & R and Berglund Food Stores, Inc.?

The leasehold agreement between J & R and Berglund contained among its provisions the following:

"Bankruptcy of Tenant 20. If the tenant is adjudicated bankrupt by a court of final jurisdiction or makes any assignments for benefit of creditors or if this lease is sold under execution, tenant shall be construed to have breached the terms of this lease, and the landlord may, at its option, terminate this lease and recover possession of demised premises from any and all parties whomsoever."

On March 4, 1970, J & R filed a petition for corporate reorganization pursuant to chapter 10 of the Bankruptcy Act. J & R continued to occupy

the leased premises until November of 1970 and paid rent through October, 1970.

Berglund on its cross appeal asserts that filing of bankruptcy amounts to an adjudication so as to effectively extinguish J & R's right to compensation.

We recognize and approvingly adhere to the statement in *Finn v Meighan,* 325 US 300, 301; 65 S Ct 1147, 1149; 89 L Ed 1624, 1626 (1945), that:

"The bankruptcy court does not look with favor upon forfeiture clauses in leases. They are liberally construed in favor of the bankrupt lessee so as not to deprive the estate of property which may turn out to be a valuable asset."

The landlord (Berglund) took no action to exercise its option to terminate until it filed its motion for accelerated judgment on April 19, 1972. It accepted rental payments through October, 1970. Accepting rent *eo nomine* from a trustee has been held to constitute a waiver on the part of a landlord, 49 Am Jur 2d, Landlord and Tenant, § 1062, p 1026, fn 6.

We hold that the rights of the parties were fixed on July 6, 1970, the date that "just compensation" for the property was deposited by the condemning agency pursuant to MCLA 213.369; MSA 8.261(9). On that day, the condemning authority secured its right to possession and J & R and/or its successor in reorganization was vested with the right to the estimated just compensation.

We hold that the trial court was correct in permitting J & R to participate in the award for the condemnation of its leasehold interest.

Third: Was the award of $5000 to the lessee for its leasehold interest proper?

The jury returned a verdict in the amount of $175,000. We have already determined that J & R Motor Supply Corp. is entitled to share in such award to the extent of the value of its leasehold interest. Appellant J & R claims that the jury should have been instructed to fix its determination to the economic rent factor.

In his instructions to the jury, the trial judge reviewed the position of the city (appraiser) that there was no economic value to the lease. Likewise, he reviewed the position of J & R (appraiser) that the discounted present value of the leasehold would be $11,509. The jury determined the value of the leasehold interest to be $5,000.

We accept the rationale of the Court in *Detroit v Kresge Foundation,* 264 Mich 336; 249 NW 870 (1933), that where different theories for apportionment exist, the court will not amend a condemnation award. The jury had differing theories representing differing amounts of valuation. Its determination was within the maximum and minimum amounts. See *Detroit v Krim,* 44 Mich App 11; 204 NW2d 732 (1972), and *Detroit v Yellen,* 28 Mich App 529, 533; 184 NW2d 563, 566 (1970).

Fourth: Was the interest rate on just compensation properly set at 5%?

MCLA 213.381; MSA 8.261(21) provides for interest on any increase in the ultimate award over the statutory advance tendered at the time of taking. Interest is to be computed from the date fixed for transfer of actual possession of the premises to the date of payment. The statute does not stipulate the rate of interest to be applied. J & R, through no fault of its own, was not present at the first hearing when the statutorily mandated deposit was apportioned.

Prior to the conclusion of the trial, a stipulation between J & R and Berglund was entered that $3,158 be furnished to J & R for its unamortized capital advance. As such, it was part of the leasehold taken. As such, interest on such amount should have been allowed.

The judgment is affirmed with the modification that interest should have been allowed on the $3,158 at 5% from the date of taking. Costs to defendant Berglund Food Stores, Inc.

All concurred.