CITY OF ALGONAC v ROBBINS

1. EMINENT DOMAIN—PERSONAL PROPERTY REMOVAL—TRADE FIX-
   TURES—COMPENSATION—COMMON LAW—CASE LAW—MOVABLE
   PROPERTY—INTENT OF OWNER—PERMANENT USE.

   The owners of real property taken by eminent domain were not
   entitled to compensation for the cost of removal of personal
   property from the premises at common law, but the costs of
   detaching and reinstalling removable trade fixtures was com-
   pensable; liberal Michigan case law has rendered insignificant
   the common law personal property/trade fixture distinction
   and removed the limitation of damages to cost of detachment
   and reinstallation to allow compensation for the cost of trans-
   porting movable property from condemned realty whenever it
   was the intent of the owner to permanently use the item in the
   operation of his business.

2. EMINENT DOMAIN—DAMAGES—EVIDENCE—DISCRETION OF COURT.

   The type of evidence which will be admitted to prove damages
   resulting from condemnation of real property is left to the
   sound discretion of the trial court.

3. EMINENT DOMAIN—VALUE OF USE—DEDUCTION FROM AWARD—
   DATE OF TITLE—DATE OF POSSESSION.

   The value of the use and occupancy of land by its former owner
   from the date that title vests in a city to the date that
   possession is surrendered is deductible from an eminent domain
   compensation award.

Appeal from St. Clair, Ernest F. Oppliger, J.
Submitted May 7, 1976, at Detroit. (Docket Nos.
20855, 20856, 21034, 21637, 21638, 21639, 21640,
21641, 21642, 21643, 21644.) Decided June 14,
1976.

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Eminent Domain § 293.
[2] 27 Am Jur 2d, Eminent Domain § 406.
[3] 27 Am Jur 2d, Eminent Domain §§ 152, 266–268, 406, 409.

Petitions by the City of Algonac to condemn certain lands owned by Alfred M. Robbins and Charlotte Robbins and others. Judgment of condemnation and compensation granted. Some defendants appeal. Reversed and remanded for further proceedings.

*Bush, Luce, Henderson, Black & Bankson,* for plaintiff.

*Leonard J. Simasko,* for defendant-appellants.

Before: T. M. BURNS, P. J., and R. B. BURNS and V. J. BRENNAN, JJ.

T. M. BURNS, P. J. Defendant property owners carried on businesses in the City of Algonac. In 1973, the city took defendants' real property by eminent domain. Defendants removed and stored equipment and fixtures used in their businesses.

During the condemnation proceedings, the trial court precluded any evidence of decrease in value of such equipment and fixtures from being presented to the jury. The city argued that the jury should consider only the cost of removing and reattaching removable trade fixtures and equipment, not any decrease in value of the items. Defendants argue that evidence should have been allowed on loss of value of the items over and above the detachment and reattachment costs.

I.

It appears that the general common-law rule is that the owners of real property taken by eminent domain are not entitled to compensation for the cost of removal of personal property from the premises. See Anno, 69 ALR2d 1453 (1960). The

cost of detaching and reinstalling removable trade fixtures, however, is compensable. 27 Am Jur 2d, Eminent Domain, § 291.

In the instant case, problems exist as to whether particular items are trade fixtures or personal property, and exactly what costs are allowed for either kind of property.

The Michigan cases are far from consistent on these issues, but it is fair to say that the trend in this state has been liberal in granting compensation to business condemnees.

In an early case involving the condemnation of property by a railroad company, the Supreme Court ruled that the property owner was entitled to compensation for any damage suffered by his business, including the expense of removal of buildings and improvements. *The Grand Rapids & Indiana R Co v Weiden,* 70 Mich 390; 38 NW 294 (1888).

*In re Widening of Gratiot Avenue,* 294 Mich 569; 293 NW 755 (1940), concerned condemnation proceedings instituted by the City of Detroit against certain business property. The issue on appeal was whether it was proper for the jury to award damages for removal costs of trade fixtures. In following its practice of giving a liberal interpretation to the just compensation clause of the Michigan Constitution (Const 1908, art 13, § 1 and Const 1963, art 10, § 2), the Court held that where the condemnee removes trade fixtures, the proper measure of damages is the value of the land as enhanced by the fixtures, less the value of the fixtures.

"Since the value of the fixtures as severed will be decreased to the extent of the cost of detaching and reattaching them elsewhere, the cost of such removal is to be considered in awarding damages." 294 Mich at 573.

The Court noted that the cost of transporting severed trade fixtures to a new location could not be awarded as damages because such damages were too speculative. 294 Mich at 577.

Similar issues arose in *In re Slum Clearance,* 332 Mich 485; 52 NW2d 195 (1952). The condemnee in that case conducted an electrolytic plating business. Among the items that were to be removed by the condemnee from his building were plating tanks and large quantities of chemical solutions and molten metal. The trial court prevented the introduction of evidence showing the loss that would be suffered in removing the liquids and of evidence of the condemnee's "business interruption" losses. In its instructions to the jury, the trial court defined fixtures as:

" '[A]rticles of personal property which are attached in some manner or means to the land or building, and can be removed without seriously damaging the premises and includes machinery and equipment. It does not include unattached personal property or stocks of merchandise.' " 332 Mich at 490.

After discussing the allowance of consequential damages in condemnation cases and adopting a broad definition of "fixture", the Supreme Court concluded that the chemical solutions and molten metals were trade fixtures constructively annexed to the real estate. The reasoning of the Court was that the liquids were essentially part of the plating tanks, which were unquestionably trade fixtures. In a broad, conclusory statement, the Court held that the jury should have been allowed to consider evidence of "loss or moving expense" of the liquids as part of the condemnee's damages. 332 Mich at 495.

The Court was a little less magnanimous in

defining "trade fixture" in *In re Civic Center,* 335 Mich 528; 56 NW2d 375 (1953). There the condemnee Detroit & Cleveland Navigation Company argued that the city should have to pay for the cost of moving four passenger vessels from the condemned river front property. The Court stated in its opinion that:

"Whether appellant is entitled to removal damages for its 4 vessels depends upon whether these vessels are fixtures or personal property.

\* \* \*

"The rule as to when property is a trade fixture or personal property is well stated in *Morris v Alexander,* 208 Mich 387 [175 NW2d 264 (1919)]:

" 'This has led to the formulation and recognition of 3 general tests which may be applied in determining a particular case, namely, first, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold.' " 335 Mich at 536–537.

The Court concluded that the ships were not trade fixtures.

In *In re John C Lodge Highway,* 340 Mich 254; 65 NW2d 820 (1954), the Supreme Court relied upon *In re Widening of Gratiot Avenue, supra,* for the proposition that the value of trade fixtures, for the purposes of condemnation proceedings, is measured by the cost of detaching them and reattaching them elsewhere.

The Court's opinion in *In re Condemnation for Battle Creek Park,* 341 Mich 412, 422; 67 NW2d 49 (1954), cites *In re Slum Clearance, supra,* for the proposition that loss of profits due to interruption of business necessitated by moving and expense of

removing personal property are not proper items to be considered in making a condemnation award.

In *State Highway Comm'r v Miller,* 5 Mich App 591; 147 NW2d 424 (1967), a panel of this Court took a giant leap forward in compensating a condemnee for expenses incurred in moving a business.

Included in the condemnee's evidence of damages were the following items: cost of moving, loss on sale of tail pipes, loss of value of inventory, and loss of value of machinery and equipment based on piecemeal sale.

The trial court had instructed the finders of fact as follows:

" 'The owners of a business are entitled to the reasonable expenses incurred by them in detaching, moving and reattaching their equipment, machinery and fixtures.

" 'The definition of fixtures or equipment or machinery for which compensation may be allowed is very broad. Fixtures are not limited to things actually attached to a building. Fixtures may include small machinery, even hand tools. The test is whether or not it was the intent of the owner to permanently use the item in the operation of his garage business. If the answer is "yes", then the item is considered to be constructively annexed to the freehold, and a part of the owner's equipment and fixtures for which moving costs may be allowed.

" 'In addition to detaching and moving expenses, the owner of a going business is entitled to compensation for his losses resulting from an interruption of that business as a result of the taking, provided such losses are such that would naturally or normally result from the interruption of the business, and are established by evidence not unduly speculative.

" 'A decrease in the value of a stock of merchandise and machinery, if the amount of such decrease is established by satisfactory evidence, would be proper ele-

ment to be considered in determining damages for business interruptions.' " 5 Mich App at 594.

The panel of this Court held that the instructions were correct and that the cost of moving and the loss in value of the condemnee's machinery, tools and inventory were properly included in the award.

Thus the personal property/trade fixture distinction was made insignificant and the limitation of damages to cost of detachment and reinstallation was removed.

This Court's approval of the above instruction is perhaps less a dramatic change in the case law than a realistic approach to the problem of measuring just compensation for one whose business and property have been reduced in value by actions of the state. It serves no legitimate purpose to stretch beyond recognition the definition of "trade fixture" in order to do justice to the condemnee, and it is needless fiction to deny the condemnee compensation for the expense of moving his business property by asserting that such an expense is too speculative.

The question yet remains, however, for what kinds of movable property should damages be allowed. We believe that the above quoted instruction enunciates the proper test: whether it was the intent of the owner to permanently use the item in the operation of his business.

The purpose of condemnation hearings being largely to measure and provide just compensation for the condemnee, the loss in value of his personal business property necessarily is a proper element of damages. What constitutes satisfactory proof of such loss is inherently difficult to define. The question of what type evidence is admissible

to prove such loss must of necessity be left to the sound discretion of the trial court.

It has been suggested by the plaintiff that the defendants have been compensated under Federal programs for the costs of removing the fixtures. On remand, this issue should be resolved so as to prevent double recovery.

## II.

Defendants also challenge the right of the city to deduct from the condemnation awards rent charged the owners for possession of the condemned property subsequent to the filing of the declaration of taking.

MCLA 213.367; MSA 8.261(7) provides that a declaration of taking be filed by the condemning authority. Within ten days of such notice, the property owner may file a motion to review the necessity of taking. MCLA 213.368; MSA 8.261(8). If no such motion is filed, title to the property vests in the petitioner after the amount of estimated compensation is deposited with the treasurer. MCLA 213.369; MSA 8.261(9). The value of the use and occupancy of the land by the owner after title thereto was vested in the city is properly deductible from the award. See *In re Urban Renewal, Elmwood Park,* 376 Mich 311, 318; 136 NW2d 896 (1965). See generally, Anno, 20 ALR3d 1164 (1968). *Cf. Rosen v Detroit,* 242 Mich 690; 219 NW 726 (1928), which concerned a provision of a city charter and which case was decided prior to the enactment of the statutes applicable herein.

Defendants' claim of discrimination by the city against property owners who protested the estimated compensation is not properly before this Court as not supported by the instant record.

Reversed and remanded for further proceedings

consistent with this opinion. No costs, neither party having prevailed in full.