THE GRAND RAPIDS & INDIANA RAILROAD COMPANY V. HUBERT WEIDEN ET AL.

*Railroad companies—Condemnation proceedings—Petition—Necessity of use—Attempt to agree with owner—Damages.*

1. In this case the findings of the jury are set aside, because not based on any following of the evidence, and because arbitrary and unjust; the Court holding that Matheson was allowed no damages whatever for his improvements, and that the sum agreed upon as the value of Weiden's land and improvements was far below that fixed by the evidence.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—Under the old Constitution, when the Legislature chartered a railroad, the *right* to build it became fixed, and could not be questioned, and consequently land-owners were obliged to acquiesce; but, under our present Constitution, there is never any presumption that a railroad is necessary, or that any particular land ought to be given up to its uses.

*b*—Every land-owner has a perfect right to object to giving up his land for the use of a railroad company, and is not confined to objections depending on price or value, but may object to the lack of necessity for the road at all, or for its location or extension over his land, at any price, or on any conditions.

*c*—In *law*, the land-owner's use of his land is presumptively as important as that of a railway company, and it must devolve upon such company to establish affirmatively all that is needful

to make out a clear case of necessity; and a road already established has no better claim than any other to extend or change its lines.

*d*—Although railroads are allowed by public policy to condemn lands, because they cannot exist otherwise, nevertheless the enterprise is, under our laws, which prohibit public ownership of railways, one of private interest and emolument, and must show its claims to legal assistance.

*e*—A railway seeking to condemn land cannot truly aver inability to agree with the owner, without an effort, by some one authorized to bind it, to induce him to accept an offer made honestly, and not merely formal or colorable. The disability is matter of substance, and not of form.

*f*—Private ownership cannot be disturbed without clear necessity, and until it appears that the land cannot be obtained by fair effort in any other way it cannot be condemned.

*g*—The powers and duties laid upon the Court by the statute require it to see that substantial justice shall not be disregarded by the jury of inquest, and, while not disposed to be governed by such technicalities as are not in the furtherance of justice, the Court is bound to see that parties are not deprived of their property without necessity, or without full compensation for being compelled to relinquish it. While respect is due to the honest action of juries, it is not conclusive, and is subject to comparison with the facts in the record.

*h*—Where land-owners are using their property in lucrative business, in which the locality and its surroundings have some bearing on its value, apart from the money value of the property itself, they are entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change.

*i*—A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it, and whatever damage is suffered must be compensated

Appeal from probate court of Kent county. Argued May 10, 1888. Decided May 18, 1888.

This is an appeal from the report of a jury in railroad condemnation proceedings. The findings were set aside for reasons stated in the opinion, in which the facts are sufficiently stated.

*Eggleston & McBride,* for appellant Weiden.

*Maher & Felker,* for appellant Matheson.

*T. J. O'Brien* and *J. H. Campbell,* for petitioner.

CAMPBELL, J. Petitioner obtained a condemnation of respondents' lands in Grand Rapids by proceedings under the general railroad laws. A *certiorari* was originally sued out, which this Court regarded as not the best remedy under the circumstances. The proceedings went on to a jury assessment, and now the whole action comes up on appeal.

It seems to have been supposed by petitioner's counsel that the dismissal of the *certiorari* leaves open no part of the record but the jury proceedings. This is an error. The reasons for resorting to a *certiorari,* instead of waiting for an appeal, were found, when the motion to dismiss was made, to have been obviated by some rulings of the Court in other cases, and for this reason, without considering the points raised, we held that the appeal would answer every purpose.

It was objected that the petition did not show the facts necessary to make out a cause for resorting to a statutory remedy. My own view has been that the petition should set out the facts indicating a disability to agree upon a purchase, instead of making a general averment to that effect, especially as the law requires the reasons for such disability to be set forth. Section 20, R. R. Laws. The general rule is that facts, and not conclusions, are to be set forth in pleadings, especially when they are required to be sworn to, so as to bring the affiant within the responsibilities of perjury if not testifying truly. In my opinion, the court should itself determine from the facts whether there has been any real disability to agree after an honest attempt to come to an agreement, especially as this is jurisdictional. But, as it was intimated in *Grand Rapids, etc., R. R. Co. v. Weiden,* 69 Mich. 572, that the form used in the present case would be

sufficient to set the court in motion, the only questions seem to relate to the truth of these allegations.

It seems to be imagined that railroad companies are to be presumed entitled to proceed to condemn lands at their own option, and that nothing more than a formal effort is required to give them the right to do so. But, under our Constitution, this is not a correct view of the subject. Under the old Constitution, when the Legislature chartered a railroad, the right to build it became fixed, and could not be questioned, and consequently land-owners were obliged to acquiesce. But, under our present Constitution, there is never any presumption that a railroad is necessary, or that any particular land ought to be given up to its uses. Every land-owner, therefore, has a perfect right to object to giving up his land, and is not confined to objections depending upon price or value. He may object to the lack of necessity for the road at all, or for its location or extension over his land, at any price, or on any conditions. In law, his use is presumptively as important as that of a railway company, and it must devolve on any such company to establish affirmatively all that is needful to make out a clear case of necessity. And a road already established has no better claim than any other to extend or change its lines. Although railroads are allowed by public policy to condemn lands, because they cannot exist otherwise, nevertheless the enterprise is, under our laws, which prohibit public ownership of railways, one of private interest and emolument, and must show its claims to legal assistance.

In the present case there was evidence to go to the jury upon the question of necessity. If the decision depended on this point, I should have some doubt whether it sufficiently appeared that the petitioner had, in any definite way, finally ascertained and determined for itself just what lands were necessary and for what purposes. The record does not show as fully as it might just how and why this land has become

essential to the company itself, aside from the question how far public convenience will be subserved by it. The location seems to involve an important change in an existing enterprise.

I think the testimony shows a reasonable attempt to agree with Weiden before the petition was filed. But, so far as Matheson is concerned, it does not appear that any responsible offer was ever made to him before the petition was sworn to. There seems to have been some chaffering afterwards. The petitioner could not truly aver inability to agree, without an effort, by some one authorized to bind it, to induce Matheson to accept an offer made honestly, and not merely formal or colorable. The disability is matter of substance, and not of form. Private ownership cannot be disturbed without clear necessity, and until it appears that the land cannot be obtained by fair effort in any other way it cannot be condemned. It does appear that there was such a difficulty before the proceeding was moved in before the probate court, and therefore that, if resworn, the petition might have been true. We are therefore inclined, though reluctant to favor any such practice, to allow the petition to stand without requiring it to be resworn or presented anew. But it is certain the statute never intended that this preliminary agreement should be made light of, or that the petition should not be sworn to with full respect to the facts, and by some one knowing them.

The powers and duties laid upon us by the statute require us to see that substantial justice shall not be disregarded by the jury of inquest. We are not disposed to be governed by such technicalities as are not in the furtherance of justice. But we are bound to see that parties are not deprived of their property without necessity, or without full compensation for being compelled to relinquish it. And, while respect is due to the honest action of juries, it is not conclusive, and is subject to comparison with the facts in the record.

Both of the appellants were using their property in lucrative business, in which the locality and its surroundings had some bearing on its value. Apart from the money value of the property itself, they were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it. Whatever damage is suffered, must be compensated. Appellants are not legally bound to suffer for petitioner's benefit. Petitioner can only be authorized to oust them from their possessions by making up to them the whole of their losses.

In Matheson's case it does not seem to us that the jury fairly estimated the value of his land. But, aside from this, which we shall not find it necessary to determine absolutely, they gave him no damages whatever for his improvements. It appeared affirmatively, and without contradiction, that the actual expenses of moving his business reached within a few dollars of all that they awarded for those purposes and for his buildings and improvements. The testimony shows that the buildings and improvements were of considerable value. The verdict is not only grossly unfair, but given without any reference to uncontradicted testimony. Juries have no right to disregard facts, and follow their own caprices. There is no reasonable ground on which the verdict against Matheson can be sustained.

The case of Weiden is not very much better. The testimony of the witnesses who were shown to be really acquainted with the value of his land placed it very much beyond the sum agreed on by the jury. Not only is that sum very much below any average standard, but, as tested by the only reliable *data* for estimates, we can see no basis for it. It is clearly

against the weight of evidence. The same is true in regard to Weiden's improvements, which the jury scaled down much below the only definite evidence on the subject. There was no ground for reducing the value of the brick buildings $3,000, or thereabouts, below their cost, and a finding of only $500 for the remaining improvements, and the losses by expense of removal and necessary damages, is in complete disregard of the facts. There is no testimony which would justify so low a verdict for the improvements alone.

We shall therefore set aside the findings in the cases of both appellants, because they are not based on any following of the evidence, and are arbitrary and unjust.

We are disposed to let the petition stand as against both appellants, and to allow the petitioner to have a new jury to pass upon all the questions involved in the record; appellants to recover costs of this Court, in addition to those awarded below.

SHERWOOD, C. J. CHAMPLIN and MORSE, JJ., concurred.