DETROIT, BAY CITY & WESTERN RAILROAD CO. *v.* FIRST
NATIONAL BANK OF YALE.

1. EMINENT DOMAIN—DAMAGES—BENEFITS.
   In the absence of statutory authority, benefits cannot off-
   set damages in proceedings for condemnation of land for
   a railroad right of way.

2. SAME—JURY—QUESTIONS OF FACT AND LAW—HOW DETERMINED.
   In proceedings to condemn a railroad right of way the jury
   are judges of the law as well as of the facts. FELLOWS,
   STONE, OSTRANDER, and BIRD, JJ., dissenting.

3. SAME—VIEW OF PREMISES—DAMAGES—APPLICATION OF BENEFITS
   TO DAMAGES.
   Where the jury, in proceedings to condemn a railroad right
   of way, viewed the premises, heard proof and argument
   of counsel, and allowed the respective owners substantial
   damages, defendants could not be heard to complain as
   to the theory of the application of benefits to damages
   adopted by the jury.

4. SAME—DAMAGES—MORTGAGES—IMPAIRMENT OF SECURITY.
   In proceedings for the condemnation of a railroad right
   of way over mortgaged land, where the jury found that
   the loss of the land for the right of way did not impair
   the security of the mortgagee, an award of damages or
   compensation for such land taken would not be warranted
   where the mortgagor had released such right of way to
   petitioner. FELLOWS, STONE, OSTRANDER, and BIRD, JJ.,
   dissenting.

Appeal from Sanilac Probate Court; Pearson, J.
Submitted January 10, 1917. (Docket No. 82.) De-
cided June 1, 1917. Rehearing denied September 28,
1917.

Condemnation proceedings by the Detroit, Bay
City & Western Railroad Company against the First
National Bank of Yale and others to acquire a right of
way. From an order confirming the award of the
jury, defendants appeal. Affirmed by a divided court.

*Lincoln Avery,* for appellants.

*John C. Hewitt* and *Walter S. Wixson* (*C. F. Gates,* of counsel), for appellee.

These proceedings were instituted in the probate court of Sanilac county under chapter 107, 3 How. Stat. (2d Ed.) § 6596 to and including § 6601 (2 Comp. Laws 1915, §§ 8252-8257), for the purpose of acquiring a right of way for the petitioner, which right of way crossed or intersected the lands of the respondents. Prior to filing the petition negotiations were had between representatives of the petitioner and respondents with the end in view of securing the right of way from each of them. They were unable to agree upon the compensation, and the petition was filed as provided by law. A jury was chosen, viewed the premises, and heard the proofs and arguments of counsel. An award was returned by them, objections of counsel heard, and the award confirmed by the judge of probate. The amounts of the awards were as follows: To John Wellman and Hattie Wellman, owners of 2.14 acres, and Otto H. Cain, mortgagee, $150; to William Wellman, owner of 3.7 acres, and Henry Patterson, mortgagee, $250; to Robert Sibbald, owner of 2.89 acres, $75; to Mary Ann Rolls, owner of 2.69 acres, $175; to Thomas Grimes, owner of 1.7 acres, and the estate of Charles Palmer, deceased, mortgagee, $50; to the First National Bank of Yale, Mich., and Charles G. Cork, interested in 2.87 acres of land as mortgagees, no dollars.

About three acres of land was taken from the Mitchell farm, upon which the First National Bank had a first mortgage lien. Mitchell had given a bonus note of $150, and subsequently gave a quitclaim deed to this right of way for a surrender of this note. The mortgage lien was not released, and the mortgagee received no part of the consideration, and was not a

party to the agreement between Mitchell and petitioner.

Objection was made to the admissibility of certain evidence, and the court ruled that the jury passed upon the admissibility of the evidence, and that he had no power of keeping any evidence from going to the jury. The respondents appeal to this court, and no question of jurisdiction or of the necessity for taking the particular parcels of lands sought to be acquired under the petition is involved in this case. The questions for review presented by the record, as stated by appellants' counsel, are as follows: ..

(1) Can a jury in a railroad condemnation proceeding set off against the value of land taken for a right of way the general benefits to be derived by the community as a whole?

(2) Can general benefits be used to reduce the amount of damages to the remaining land after a right of way is taken?

(3) Can a jury refuse to determine the value of land taken, when the same is subject to a mortgage lien, the mortgagor having released the right of way subject to the mortgage?

(4) Is it within the province of a condemnation jury to pass on the sufficiency of the security to satisfy a mortgage indebtedness, and award nothing for mortgaged land taken for a right of way, if in its opinion sufficient land remains, subject to the lien, to satisfy the debt?

KUHN, C. J. (*after stating the facts*). Upon the hearing before the jury it was claimed by petitioner's counsel that the benefits should be taken into consideration in arriving at the compensation, and only such compensation should be allowed as the testimony showed the value of the several parcels were depreciated by the proposed improvements, and the respondents contended, and so argued before the jury, that no benefits, general or special, should be offset against

the value of the land taken or against the damages to the remaining land. Regarding this contention, under the present state of the law in this State, in our opinion the respondents were correct. The statute under which these proceedings are brought. (section 21, art. 2, chap. 164, 2 Comp. Laws, § 6246, 2 Comp. Laws 1915, § 8255) nowhere refers to benefits, and no authority is vested in the jury to estimate the benefits and reduce the award for the value by taking therefrom the amount of the estimated benefits. In the case of *Township of Custer* v. *Dawson*, 178 Mich. 367 (144 N. W. 862), the statute (1 Comp. Laws 1915, § 4310) expressly provided that "the benefits accruing to owners of lands by reason of laying out or altering any highway shall be taken into consideration," which distinguishes that case from the one now under consideration. It is argued that "just compensation," as used in the Constitution (section 1, art. 13), means a compensation which would be just in regard to the railroad company as well as in regard to the individual, and if the jury should be satisfied that the individual would receive benefit from the taking of the property, it could not be said to be just compensation to give him full value. This question was recently considered by us in the case of *Plantenga* v. *Railway Co.*, 190 Mich. 661 (157 N. W. 425), and I was of the opinion that the petitioner's contention was a just and reasonable construction of the language of the Constitution. The majority of my Brethren did not agree with me, and I therefore now defer to their judgment, and it must be said that the rule in this State is that, in the absence of authority given by statute, benefits cannot offset the damages and should not be considered in proceedings of this kind.

It was early decided, however, that the jury in proceedings such as these are judges of both the law and the facts. In *Toledo, etc., R. Co.* v. *Dunlap*, 47 Mich.

456 (11 N. W. 271), Justice CAMPBELL, in commenting upon this statute, said:

"The judge formed no part of this special tribunal. The statute, indeed, allows the judge to 'attend said jury, to decide questions of law and administer oaths to witnesses.' Section 21, art. 2. But the same statute which allows this allows him to designate a circuit court commissioner for the same purpose, and also allows the jury to proceed without either. Whatever the language of this statute, literally construed, may mean, it is very clear that any such functions must, at most, be advisory. The jury will undoubtedly be regarded as accepting and doing what they permit to be done. But in all such cases the Constitution, as well as the principles of the common law, makes them judges of law and fact. *Chamberlin* v. *Brown*, 2 Doug. 120. Their conclusions are not based entirely on testimony. They are expected to use their own judgment and knowledge from a view of the premises, and their experience as freeholders, quite as much as the testimony of witnesses to matters of opinion. And while an appellate court is bound in such cases to set aside proceedings which appear to be based on false principles, it cannot properly deal with rulings as if they were excepted to on a common-law trial or dispose of the controversy on merely technical notions. *Chamberlin* v. *Brown*, *supra; Michigan Air-Line Railway* v. *Barnes*, 44 Mich. 222 (6 N. W. 651)."

It was the claim of the petitioner, and the testimony tended to show, that the benefits exceeded the damages, and the several farms would be of greater value after the railroad was constructed across them than before the condemnation. The jury viewed the premises, heard the proofs, the argument of counsel and accepted the theory of respondents, rejecting the theory of the petitioner, and allowing the several owners of the fee substantial damages in each case. It is not to be presumed that the incompetent evidence which was introduced regarding benefits influenced their judgment any more than the same evidence would if it had come to them when acting merely as citizens buying and selling

the land.  See *Detroit, etc., R. Co.* v. *Crane,* 50 Mich. 182 (15 N. W. 73).  We are therefore of the opinion that the respondents cannot be heard to complain as to the first and second propositions here advanced by them.

With reference to the other contentions of respondents' counsel, it must be borne in mind that the mortgagor had released the right of way to the petitioner, and that the mortgagee possessed no title to the land, and its interest in the real estate is simply to see that the value is not diminished.  The jury found that the mortgagee's security was not impaired by the taking of the 2.87 acres of land of the mortgagor.  Whether in arriving at this conclusion they recognized the claim as to benefits or decided for other reasons that the changed conditions did not impair the value of the mortgagee's security is conjectural.  If the jury, after carefully viewing the premises and hearing the testimony, became satisfied that the value of the security in dollars and cents remained equal to what it was before, the mortgagee is in no respects injured, and the jury would not be warranted in awarding damages or compensation under such circumstances.  We see no valid reasons for disturbing the award of the jury, and the proceedings are therefore affirmed, with costs to the petitioner.

MOORE, STEERE, and BROOKE, JJ., concurred with KUHN, C. J.

FELLOWS, J. (*dissenting*).  I am unable to agree with the Chief Justice in the disposition to be made of this case.  I understand the rule to be that this court will not ordinarily set the award in condemnation proceedings aside because of the introduction of improper evidence (*Detroit, etc., R. Co.* v. *Campbell,* 140 Mich. 384 [103 N. W. 856], and cases there cited) ; but where we are clearly satisfied that improper and preju-

dicial testimony was received and acted upon by the jury, and the award made was the result of such improper and prejudicial testimony, or the result reached by the jury was clearly brought about by the adoption of an erroneous theory of the law, our duty is plain. As was said by Mr. Justice CAMPBELL in *Grand Rapids, etc., R. Co.* v. *Weiden,* 70 Mich. 390 (38 N. W. 294) :

"The powers and duties laid upon us by the statute require us to see that substantial justice shall not be disregarded by the jury of inquest. We are not disposed to be governed by such technicalities as are not in the furtherance of justice. But we are bound to see that parties are not deprived of their property without necessity, or without full compensation for being compelled to relinquish it."

I do not believe it to be within the province of courts, or a jury of inquest, to deprive a mortgagee of a portion of the security agreed upon and covered by the terms of the contract of mortgage, even for a public purpose, without just compensation. In the case of *Long* v. *Kaiser,* 81 Mich. 518 (46 N. W. 19), as in the instant case, the mortgage had been foreclosed. The trial court there found as a fact that the value of the premises was considerably in excess of the amount of the mortgage, but this court said:

"The effect of this decree, if allowed to stand, would be to compel the mortgagees to accept a part of the property held by them as security, in satisfaction of their debt. This the courts have no right to do, unless it clearly appears that the mortgagees have released, or agreed to release, such part of the mortgaged premises. This the complainant alleged in his bill, but the circuit judge did not so find, nor do we think there is any evidence in the case of such an agreement. Every mortgagee has a right to have all the property covered by his mortgage brought to sale for the satisfaction of his debt. The courts cannot appraise the property, and say to the mortgagee: 'You may have so much, which, in our judgment, is enough to satisfy you.' The courts can, in a proper case, order

a sale of the property in parcels, and in a certain order, but cannot say that the mortgagee shall release a part, and take the remainder for his debt."

The defendant First National Bank of Yale held a mortgage on 100 acres of land owned by one Andrew E. Mitchell. This mortgage had been foreclosed, and the amount due the bank when the equity of redemption expired would be $5,880. The amount of land taken by the railroad in this proceeding was 2.87 acres. The plaintiff produced only one witness who testified with reference to the value of this land. He says:

"In my opinion, the entire value of the Mitchell land, 100 acres, as it lies, based on the price a man said he would take it for, is $6,500; it may be worth $7,000. Based upon my own knowledge of value, for farming purposes, I think it would be worth from $60 to $65 an acre; the north end would not be worth more than $50 an acre."

Defendant produced one witness who testified that this land was worth $60 per acre and another witness who put the value at $50 to $55 per acre. It also gave testimony tending to show damages to the extent of $10 per acre by reason of the construction of the railroad. In addition to the bank's mortgage, there was a second mortgage for $500 held by one Cork, whose claim did not receive any consideration or award by the jury. As he has not appealed, we cannot adjudicate his rights, but we may consider this action of the jury as showing the theory upon which they proceeded in reaching the result. Andrew E. Mitchell had executed a quitclaim deed of the right of way to the plaintiff, but he could not, and did not, thereby wipe out and discharge the lien of the bank or of Cork. Proper practice required, as contended by defendant, that the jury should fix the damages to this piece of land; then an apportionment of the award to those en-

titled might be had, pursuant to the provisions of section 6249, 2 Comp. Laws (section 6602, 3 How. Stat. [2d Ed], 2 Comp. Laws 1915, § 8258). I am not prepared to hold that a failure to follow this practice would constitute such error as would justify setting aside the award where substantial justice has been done. However, the practice adopted in the instant case makes patent the error into which the jury fell by adopting plaintiff's theory and evidence.

It was the plaintiff's theory that the jury "should consider the general benefits to the lands of each defendant for the construction of petitioner's railroad, and to set off the same against the value of the land taken and the damages, if any, to the remaining land," and witness after witness was called by plaintiff and gave testimony tending to show, not only such special benefits to the owners of land traversed by the railroad, but also testimony was given tending to show general benefits to the community at large. The failure to allow any damages to the bank, although nearly three acres of its security was taken from it, and the balance of its security seriously damaged, puts beyond cavil that the jury adopted the theory so forcefully urged upon them by the able counsel for the plaintiff. This is fortified by the fact that Cork, and his mortgage of $500 junior to that of the bank also appears to have been entirely lost sight of, and no damages were awarded to him. Upon no theory could this result have been reached upon this record, other than that the benefits derived from the building of this railroad equaled or exceeded the value of the land taken together with severance and other damages to the land remaining.

Being satisfied that plaintiff's theory was adopted as to the Albert E. Mitchell land, I think we must conclusively presume that it was adopted as to the other lands taken and that it permeated the entire award.

But I am not content to rest my conclusion as to the other awards on this presumption. The damages awarded as to the other pieces of land taken is equally persuasive that the same theory was adopted as to them. Robert Sibbald was awarded $75 for 2.89 acres of land in the village of Roseburg. Witness Ruttle, plaintiff's right of way man, testified that he offered Sibbald $50 per acre, which was refused, and he later offered $100 per acre. He says:

"I think I made him a fair offer. I don't think he would be entitled to any damages or compensation at all by reason of the benefits he got."

Plaintiff gave no further testimony as to the value of the Sibbald piece, and there is no testimony in the record justifying a conclusion that the land taken was worth less than $50 per acre. At $50 per acre the land taken is worth $144.50, and when we consider that it was a strip 66 feet wide and extending 1,908 feet through Mr. Sibbald's land the conclusion is irresistible that the jury did adopt plaintiff's theory, and not only offset supposed benefits arising out of the construction of the railroad to wipe out severance damages, and other damages to the remaining land, but also by the same process wiped out nearly one-half the value admitted by plaintiff for the actual land taken. Mr. Justice CAMPBELL, in *Grand Rapids, etc., R. Co.* v. *Chesebro,* 74 Mich. 466, 474 (42 N. W. 66, 69), said:

"* * * The mere taking of 4 acres for a right of way could not be regarded, in any sensible point of view, as compensated by one-tenth of the value of the 40 acres, taking acre for acre. The damages in such a case must be such as to fully make good all that results, directly or indirectly, to the injury of the owners in the whole premises and interests affected, and not merely the strip taken."

In the instant award the jury have allowed only about one-half the admitted value per acre of the land taken.

This award can be permitted to stand only upon the theory that benefits may be offset against damages, a theory out of accord with the *Plantenga Case*, cited by my Brother KUHN.

John Wellman and Hattie Wellman, owners, and Otto H. Cain, mortgagees, were allowed $150 for 2.14 acres of land. The only testimony offered by plaintiff as to the value of this land was its offer of $80 per acre for it. At this figure per acre the strip taken was worth $171.20. But like the Sibbald strip it was 66 feet wide, and the record disclosed that it entered a 40 at the northwest corner and ran practically diagonally across it, coming out 556 feet west of the southeast corner. Can we close our eyes to the right of the owner to just compensation under both Federal and State Constitutions, and to the fact that such just compensation includes not only the value of the land taken, but also all damages to that remaining, and conclude that the jury of inquest adopted the correct theory, that advanced by the defendant, when they allowed less than the admitted value of the land taken? I think not.

I shall not take up the other awards. Some of them are not as marked as those to which attention has been called. Some of them, when properly analyzed, are equally so. The conclusion is irresistible, the record establishes beyond doubt, that the jury accepted plaintiff's theory that benefits could be offset against damages in condemnation proceedings, and, believing the great mass of plausible testimony as to such benefits, did not award to the defendants that just compensation secured to them by the Constitution when their private property is taken for a public use.

I think the award should be set aside, and a new appraisal ordered.

STONE, OSTRANDER, and BIRD, JJ., concurred with FELLOWS, J.