*In re* GRAND HAVEN HIGHWAY.

STATE HIGHWAY COMMISSIONER *v.* DAKE CORPORATION.

1. EMINENT DOMAIN—HEARING—PRETRIAL BRIEF—SERVICE ON OPPOS-
ING PARTY.

No reversible error was committed by filing pretrial brief with the
appointed commissioners prior to hearing on damages, where
such brief did not misstate the law and was not prejudicial in
tone, and on the day of the hearing was served on condemnor's
counsel who took ample opportunity thereafter to explain its
position; although the filing of brief at such time is not con-
doned (CL 1948, § 213.171 *et seq.*).

2. COURTS—PRETRIAL BRIEF.

A pretrial brief should never be presented to the tribunal who
makes the final decision unless under the supervision and with
the consent of the presiding judicial officer.

3. EMINENT DOMAIN—CONDEMNATION OF PART OF MANUFACTURING
PLANT—DECREASED VALUE OF BALANCE.

The decreased value of remaining buildings, no longer usable be-
cause of condemnation of part of buildings used by manu-
facturer, is allowable as compensation.

4. SAME—CONDEMNATION OF PART OF TRACT—DECREASED VALUE OF
BALANCE.

Direct compensation is allowable for the portion of a tract ac-
tually taken in condemnation proceedings and, in addition, the

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  53 Am Jur, Trial § 11.
[3, 4]  18 Am Jur, Eminent Domain § 265 *et seq.*
[5, 6]  18 Am Jur, Eminent Domain § 247.
[7]  18 Am Jur, Eminent Domain § 240.
[8]  18 Am Jur, Eminent Domain § 279.
[9, 11, 12]  18 Am Jur, Eminent Domain §§ 365, 366, 376.
[14]  18 Am Jur, Eminent Domain § 364 *et seq.*
[16]  18 Am Jur, Eminent Domain § 259.
[17]  18 Am Jur, Eminent Domain § 255.
[18]  18 Am Jur, Eminent Domain § 376.
[20]  18 Am Jur, Eminent Domain § 373 *et seq.*

amount by which the value of the parcel from which it is taken is diminished on account of the use made of the land taken.

5. SAME—SPECIAL USE AS AN ELEMENT OF VALUE.

The adaptability of land for a special purpose or use may be considered as an element of value in condemnation proceedings to which the owner has a right to compensation.

6. SAME—SPECIAL USE—MARKET VALUE.

The special use to which property is devoted when it is sought to be condemned for public use is taken into consideration as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which, in a general sense, may be said to be the market value, market value being, always, the ultimate test.

7. SAME—NECESSITY—MEASURE OF DAMAGES.

A landowner must yield to the public necessity in condemnation proceedings, the "just compensation" which he should receive. meaning at no sacrifice on his part, and putting him in as good a condition as he would have been if the injury had not occurred (Const 1908, art 13, § 1).

8. SAME—HIGHWAY PURPOSES—DETERMINATION OF VALUE.

The determination of value in condemnation proceedings for highway purposes is not a matter of formula or artificial rules but of sound judgment and discretion by the court commissioners based upon a consideration of all relevent facts in a particular case (CL 1948, § 213.171 *et seq.*).

9. SAME—EVIDENCE—SUPREME COURT.

An award by court commissioners in a proceeding to condemn property for highway uses may not be disturbed by the Supreme Court unless palpably contrary to the evidence, the province of the Court being to review the evidence to see that the finding is supported thereby (CL 1948, § 213.171 *et seq.*).

10. SAME—COMMISSIONERS—CREDIBILITY OF WITNESSES.

The court commissioners in a proceeding to condemn property for highway purposes are the judges of the credibility of the witnesses and the truthfulness of their statements (CL 1948, § 213.171 *et seq.*).

11. SAME—COMMISSIONERS—DAMAGES.

The court commissioners in a proceeding to condemn land for highway purposes hear the testimony, examine the property, consider the estimates placed upon the damages which should

be awarded to the respective parties and make a final determination (CL 1948, § 213.171 *et seq.*).

12. SAME—DAMAGES—EVIDENCE.

An award made by court commissioners in a proceeding to condemn land for highway purposes that is within the minimum and maximum amounts of damages, as disclosed by the record, is supported by the evidence (CL 1948, § 213.171 *et seq.*).

13. SAME—LUMP-SUM AWARD—LAND AND BUILDINGS—BUSINESS INTERRUPTION—RELOCATION OF MACHINERY AND EQUIPMENT.

No determination can be made as to what part of a lump-sum award by court commissioners in a proceeding to condemn part of a tract of land for highway purposes was based on damages to land and buildings, where the condemnee, operating an arbor and hydraulic press factory, also presented proofs as to expenses occasioned by business interruption and of relocating machinery and equipment and neither party appears to have requested a finding other than a lump-sum award (CL 1948, § 213.171 *et seq.*).

14. SAME—DAMAGES—EVIDENCE—VIEW OF PREMISES.

The persons entrusted with the duty of determining damages in condemnation proceedings are judges of both the law and the facts and are not bound, as to value of property taken, by testimony of witnesses alone, but may exercise their own judgment, based not only on the testimony, but from knowledge gained from view of premises.

15. SAME—FACTORY—LAND AND BUILDINGS—VALUE—EVIDENCE.

It was not improper for condemnee in proceeding by State highway department to condemn 17% of the area of a 5-acre tract devoted to manufacture of arbor and hydraulic presses, including 4 of the 11 buildings and 40% of the manufacturing floor space to introduce proof of damages in regard to land and buildings (CL 1948, § 213.171 *et seq.*).

16. SAME—EVIDENCE—BUSINESS INTERRUPTION.

Evidence, presented in proceeding to condemn for highway purposes a portion of 5-acre tract devoted to manufacture of arbor and hydraulic presses, as to expenses occasioned by business interruption, compiled by the condemnee's employees pursuant to a plan designed to hold the business interruption to a minimum and audited by an independent accounting firm, was properly introduced for consideration as to value and weight by commissioners making the award, where it was not speculative and had a reasonable degree of certainty; it being permissible to recover expenses, but not loss of profits due to interruption of business (Const 1908, art 13, § 1; CL 1948, § 213.171 *et seq.*).

17. SAME—DAMAGES—REMOVAL AND REATTACHMENT OF FIXTURES.

The landowner's cost of removing and reattaching fixtures, or the purchase of new fixtures, necessitated by condemnation of part of tract devoted to manufacturing operations is a proper element to be included in an award of just compensation (Const 1908, art 13, § 1; CL 1948, § 213.171 *et seq.*).

18. SAME—COMMISSIONERS—EVIDENCE—SUPREME COURT.

It is not the Supreme Court's duty, or right, to assay the weight and value of the evidence introduced in proceeding to condemn land for highway purposes, but rather to determine whether the evidence was of such a nature that it could be properly considered by the court commissioners (CL 1948, § 213.171 *et seq.*).

19. SAME—DAMAGES—EVIDENCE.

Award by court commissioners of $393,296 to manufacturer of arbor and hydraulic presses in proceeding to condemn such a portion of their 5-acre tract as to necessitate removal of the entire productive facility to a new location *held*, within the range of testimony showing a maximum damage of $438,847.13 and minimum of $187,360 (CL 1948, § 213.171 *et seq.*).

20. SAME—CONDUCT OF COMMISSIONERS—EVIDENCE—DAMAGES.

Record on appeal from award to manufacturer of arbor and hydraulic presses for portion of 5-acre tract of land and 4 of 11 buildings condemned for highway purposes *held*, not to have disclosed any circumstances of fraud, misconduct, gross error, mistake, undue influence, partiality, bias, prejudice or unfaithfulness, on the part of the court commissioners or erroneous rejection or admission of testimony affecting the rights of the parties or that damages awarded were either inadequate or excessive, hence, petition for appointment of new commissioners is denied (CL 1948, § 213.171 *et seq.*).

Appeal from Ottawa; Smith (Raymond L.), J. Submitted January 19, 1959. (Docket No. 43, Calendar No. 47,739.) Decided July 13, 1959.

Condemnation proceedings instituted by Charles M. Ziegler, State Highway Commissioner, to take property of Dake Corporation, a Michigan corporation, for highway purposes in the City of Grand

Haven. From determination of compensation, plaintiff appeals. Award affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Victor H. Meier, Don Binkowski* and *Samuel D. Frane,* Assistants Attorney General, for plaintiff.

*Warner, Norcross & Judd (Harold S. Sawyer* and *Peter Van Domelen,* of counsel), for defendant.

KELLY, J. The Dake Corporation (appellee), located in Grand Haven, Michigan, manufactures arbor and hydraulic presses. Since 1953 its annual business has exceeded $1,250,000, and in 1956 approximated $1,900,000.

The factory is built on a rectangular parcel of land with an area of approximately 5 acres, with 11 buildings, plus a loading dock, concrete driveways, and fences.

In order to widen US–31, the highway department of the State of Michigan (hereinafter referred to as the department) condemned a strip of land involving 4 buildings, resulting in Dake's loss of 40% of its manufacturing floor space and 17% of its land area, forcing Dake to move its entire productive facility to a new location.

In its presentation to the court commissioners[*] Dake divided its proof as to damages in 3 general categories: (1) Damage to land and buildings; (2) Expense occasioned by business interruption; (3) Expense of relocating machinery and equipment.

This opinion will be written in respect to the propriety of testimony supporting Dake's 3 claimed items of damages and the department's contention

[*] See CL 1948, § 213.171 *et seq.* (Stat Ann and Stat Ann 1957 Cum Supp § 8.171 *et seq.*).—REPORTER.

that prejudicial error resulted through Dake's mailing a brief to the commissioners before the hearing.

No. 1.   *In re Dake's mailing of brief.*

A few days before hearing Dake mailed to the 3 commissioners a 22-page brief entitled "Memorandum on Behalf of Dake Corporation" and failed to present a copy to the department until the day of hearing.

In claiming prejudicial error, the department only refers to one paragraph of the memorandum reading as follows:

"In the final analysis the nature of this proceeding is such that its outcome will be determined by the exercise of a sound sense of values and good business judgment, rather than by resort to the many, and oftentimes perplexing, technicalities of the law."

Ruling on the question of reversible error, the trial court stated:

"Counsel for the State makes an issue of the failure of the other side to provide it with a copy of the pretrial brief filed with the commissioners until the first day of the hearing.   While the court understands that the ethics of the profession require that briefs be filed with opposing counsel at the same time as they are filed with the court, failure to adhere thereto does not seem a proper ground to upset this award in view of the fact that the brief so filed did not misstate the law nor was it prejudicial in tone and in view of the fact that counsel for the State took ample opportunity thereafter to explain its position."

In concurring with the trial court that the filing of the brief did not constitute reversible error, we do not condone such practice in the future and emphatically state that a pretrial brief should never be presented to the tribunal who makes the final de-

cision unless under supervision and with the consent of the presiding judicial officer.

No. 2. *In re damages to land and buildings.*

Appellant contends that appellee failed to submit proper proof of fair market value *before* and *after* condemnation because its witness Nedeau testified as to the value as a "going concern use" and not the market value.

Nedeau's 23-page appraisal report, showing $338,-000 as a fair market value *before* taking and $90,000 as value *after* taking, was admitted without objection. This report established that he considered both the capitalization-of-income method and the depreciated-reconstruction-cost approach and that he rejected the income method as not being applicable.

The department's expert witnesses used the depreciated-reconstruction-cost approach, one reducing Nedeau's $338,000 figure to $306,350, and the other reducing it to $277,920.

The problems of manufacturing heavy arbor and hydraulic presses compelled Dake to have a "special purpose building" and, being unable to acquire an existing building, was required to construct a new building. After condemnation Dake had no use for the remaining buildings, other than resale, and this decreased value of these buildings is allowable as compensation under our decision in *In re Widening of Michigan Avenue, Roosevelt to Livernois,* 280 Mich 539, 548, 549, wherein we said:

"Where only part of a parcel is taken, just compensation is to be determined by the amount which the value of the parcel from which it is taken is diminished. The value of the part actually taken is allowed as direct compensation, but the decreased value of the residue of the parcel on account of the use made of the land taken is also allowable as compensation. *Port Huron & South-Western R. Co.*

v. *Voorheis,* 50 Mich 506; *Fitzsimons & Galvin, Inc.,* v. *Rogers,* 243 Mich 649; *Johnstone* v. *Detroit, G. H. & M. R. Co.,* 245 Mich 65 (67 ALR 373); *In re Widening of Bagley Avenue,* 248 Mich 1.  Where only a part of a building is taken, if the remaining portion is of great value and there can be advantageous reconstruction, rearrangement and new adjustment, then the cost of altering the building and all consequential damages because of such alteration, plus the value of the part taken, furnishes the rule for measuring the compensation to be awarded.  If what remains after a part is taken is worthless, the jury should allow the whole value of the building. If not, they should consider what may be done with the remainder and the cost of doing it.  *City of Detroit* v. *Loula,* 227 Mich 189; *In re Widening of Bagley Avenue, supra.*"

Nedeau based his judgment on the special nature of the buildings and that there was economic justification for their existence.  He was justified in so doing, and in support thereof we quote from 18 Am Jur, Eminent Domain, § 247, p 885, as follows:

"The adaptability of the land, sought to be taken in eminent domain, for a special purpose or use may be considered as an element of value.  If the land possesses a special value to the owner which can be measured in money, he has the right to have that value considered in the estimate of compensation and damages.

"While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, as a church or a college or a cemetery or the fee of a public street, or some other piece of property which may have an actual value to the owner, but which under ordinary conditions he would be unable to sell for an amount even approximating its real value.  As market value presupposes a willing buyer, the usual test breaks down in such a case, and hence it is sometimes said that such property has no market

value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. This is not taking the 'value in use' to the owner as contradistinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value."

Michigan Constitution 1908, art 13, § 1, provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

This Court has repeatedly construed what is meant by the words "just compensation" and has steadfastly held to the holdings in *In re Petition of Rogers*, 243 Mich 517, that while, in condemnation proceedings, the landowner must yield to public necessity, he should receive just compensation and that this means at no sacrifice, and in *In re Widening of Bagley Avenue*, 248 Mich 1, 5, that "Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred."

The commissioners were not bound by formula in determining damages, as is disclosed in *In re Widening of Gratiot Avenue*, 294 Mich 569, wherein we held that the determination of value in condemnation proceedings is not a matter of formula or artificial rules but of sound judgment and discretion

based upon a consideration of all relevant facts in a particular case.

In a recent decision, *In re Civic Center* (*Detroit v. D. & C. Nav. Co.*), 335 Mich 528, we established the following principles:

"A jury's award in condemnation proceedings may not be disturbed by the Supreme Court unless palpably contrary to the evidence, the province of the Court being to review the evidence to see that the finding is supported thereby."

"The jury in a condemnation case is the judge of the credibility of the witnesses and the truthfulness of their statements."

"The jury in a condemnation case hears the testimony, examines the property, considers the estimates placed upon the damages which should be awarded to the respective parties and makes the final determination."

"An award made by the jury in condemnation proceedings within the minimum and maximum amounts of damages, as disclosed by the record, is supported by the evidence." (Syllabi.)

In regard to land and buildings, Dake offered proof of a maximum *before* value of $338,000, less minimum *after* value of $78,810, and consequently a difference of $259,190. The department endeavored to prove $260,360 minimum *before* value, less a maximum *after* value of $150,000, resulting in a difference of $110,360.

The award of $393,296 did not specify as to the amount allowed for each of the 3 general categories of damages hereinbefore set forth and, therefore, no determination can be made as to what part of the award was based on damages to land and buildings. The record does not disclose that either the department or Dake requested a finding other than a lump-sum award.

In *In re Widening of Bagley Avenue, supra,* we held that those entrusted with the duty of determining damages in condemnation proceedings were judges of both the law and the facts and that they are not bound, as to value of property taken, by testimony of witnesses alone but could exercise their own judgment, based not only upon testimony, but from knowledge gained from view of premises.

The department had ample opportunity to introduce testimony of its own choosing as to what should be considered damages. We cannot agree with the department that Dake's submission of proof of damages in regards to land and buildings was improper, calling for a reversal of the award.

No. 3. *Expenses incurred by business interruption and relocating machinery and equipment.*

The department contends that this Court "without specifically saying" so has overruled the *Moesta* and *Weiden* decisions (hereinafter cited) and further states that if this is not so, requests we overrule these decisions in deciding this appeal. In *Grand Rapids & I. R. Co.* v. *Weiden,* 70 Mich 390, this Court allowed loss occasioned by the interruption of business, as is disclosed by the following quotation from page 395:

"Apart from the money value of the property itself, they (the owners) were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it. Whatever damage is suffered, must be compensated. Appellants are not legally bound to suffer for petitioner's benefit. Petitioner can

only be authorized to oust them from their posses-
sions by making up to them the whole of their losses."

In *Commissioners of Parks of Detroit* v. *Moesta*,
91 Mich 149, 154, this court said:

"The constitutional provision entitling the owner
of private property, taken for public use, to just
compensation, has uniformly been construed to re-
quire full and adequate compensation. The rules
to be applied in fixing the compensation are not
necessarily the same as obtain in fixing damages
in actions upon contracts. The correct rule of com-
pensation in such cases is more nearly analogous to
the remedy afforded in an action in tort in which
property rights have been interfered with without
the owner's assent. In such cases damages for the
interruption of the owner's business are allowed.
*Allison* v. *Chandler*, 11 Mich 542, 549."

Appellant contends that:

"In the fairly recent cases of *In re Park Site, City
of Detroit*, 247 Mich 1, 3, 4; *In re Jeffries Homes
Housing Project*, 306 Mich 638; *In re Slum Clear-
ance*, 332 Mich 485, 496; and *In re Condemnation for
Battle Creek Park*, 341 Mich 412, 422, the Supreme
Court repudiated the tort theory set forth in the
*Weiden Case* and in the *Moesta Case*, and denied re-
covery of losses due to interruption of business."

An examination of the 4 above cases cited by ap-
pellant discloses that this Court held that the prop-
erty owner could not recover loss of profits because
of damages caused by business interruption, but
did not repudiate *Moesta* or *Weiden* in regards to
expenses incurred by business interruption. To
eliminate any doubt of this Court's position, we hold
that the evidence introduced in this condemnation
proceeding showing expenses occasioned by business
interruption was properly introduced for considera-

tion as to value and weight by the commissioners making the award.

To recover damages from business interruptions the proof must not be speculative and must possess a reasonable degree of certainty.

Dake formulated a plan whereby production could be maintained during the move from the condemned property to its new location. This required a zone moving plan, so that operations could be carried on in the zone being moved without stopping operations in the other zones.

To carry forward the plan, 180 different metal working machines, plus such accessories as air compressors, water pumps, job clocks, ADT systems, autocall systems, electric capacitors, compressed air piping, heavy duty electric bus duct, et cetera, had to be detached and installed in the new location. The record discloses that after study 4 plans were suggested:

1. Moving to a new site with exact duplicate layout, using all existing material possible.

2. Moving to a new site with exact duplicate layout and using sufficient new materials to correlate the reinstallation time to the actual moving time, thereby reducing interruption to a minimum.

3. Relocating on the remaining portion of the present site using all existing material possible.

4. Relocating on the remaining portion of the present site and using sufficient new material to correlate the reinstallation time to actual moving time, thereby reducing interruption to a minimum.

Dake employed the accounting firm of Ernst & Ernst to determine the mathematical accuracy and procedure of each of these 4 plans. This firm's report was placed in exhibit form and introduced and explained by competent testimony at the hearing before the commissioners.

Dake's expenses occasioned by business interruption, under plan 2, were estimated as follows:

"Additional direct labor costs ....... $20,633.32
"Additional indirect labor costs .....   7,091.67
"Efficiency loss of direct productive
   labor ...........................   7,970.10
"Estimated additional cost of operat-
   ing dual facilities during the re-
   location period ..................  17,371.00
                                       _____
   "Total ....................... $53,066.09."

We disagree with the department's claim that Dake's testimony should not be considered because it was speculative and conjectural. We quote the following from the testimony of the department's expert witness, Wally E. George:

" 'For nearly a year now, the company has been engaged in a large-scale project to appraise various means of developing the new plant required by the loss of land to the State. After much debate and consideration of many ideas, the officers decided that they would like to remain in Grand Haven, and they reduced their thinking to 4 possible plans. * * *

" 'The management has carefully undertaken a program of projecting out-of-pocket costs, as they see them, for making such moves as the 4 plans would contemplate. They have had their auditors, Ernst & Ernst, analyze their computations primarily on plan No. 2, and prepare a report on this subject. We were given a confidential opportunity to preview this report before it was given to their client. * * *

" 'We think the Dake Corporation has done an extremely careful job in projecting the contemplated move. One might quarrel with them on the size of some of their figures, but can hardly question the sincerity behind the computations.

" 'Summing it all up, we see the present manufacturing business of the corporation as being an efficient one. The management is turning out an excellent product line, and economically running their business to produce a good profit. If the highway were not going to interrupt, they might well continue where they are, and reasonably maintain and expand their present facilities over the next decade, without need of earlier finding a new manufacturing location.' "

Attached to defendant's exhibit 1, purporting to constitute a resume of exhibits E–1, E–2, E–3 and E–4, was a letter from Ernst & Ernst. The department, complaining, quotes the following from that letter:

"Our review of the details of the computations under plan 2 consisted of (1) testing the arithmetical accuracy of the computations and summarizations and (2) reconciling the amounts included therein for services to be performed by outside contractors with the quotations submitted by the contractors. Our review disclosed no significant exceptions to the amounts computed by employees of the corporation.

"There is included herewith an estimate of the additional costs which will be incurred as a result of operating dual plant facilities during the moving period under the conditions assumed under plan 2.
*   *   *

"Based upon our review, as outlined herein, we believe that the accompanying summary of estimated costs of relocating the productive facilities of Dake Corporation constitutes a reasonable estimate of such costs on the basis of the various assumptions made in connection with 'plan 2.' Such estimate does not include any amounts for cost of replacing the present building and site."

The department, referring to this letter, states:

"It is fair to assume that the members of the commission were well impressed by the reputation of Ernst & Ernst for accuracy and integrity. It is equally obvious that Dake sought to avail itself of such direct benefit from that reputation as would be permitted by Ernst & Ernst.    *    *    *

"But it is also evident that anyone reading the schedule either without reading the accompanying letter or after reading same casually would gather the impression that what is set forth as a problem in arithmetic takes on the appearance of an opinion by Ernst & Ernst."

The department did not, and could not, challenge the integrity or business ability of the commissioners. We cannot agree with the department that the letter and the introduction of a large number of work sheets confused the commissioners, thereby calling for reversal of the award.

Throughout the proceedings the department took the position (and argued to the commissioners) that moving costs were not a damage item because cost of fixture removal can only be recovered by a lessee and not by an owner in possession. The department states:

"It is the State's contention that the ambiguous Michigan law should be clarified to follow the weight of authority. This overwhelming authority is to the effect that the cost of moving machinery and equipment, which strictly is personal property, resulting from condemnation is an improper element of compensation."

Plaintiff turns to text writers and decisions of other States to support its contention. We find that Michigan law is not ambiguous on this point, and in support of this conclusion quote from *In re Widening of Gratiot Ave.,* 294 Mich 569; *In re Slum*

*Clearance (Appeal of United Platers, Inc.)*, 332 Mich 485; and *In re John C. Lodge Highway*, 340 Mich 254.

*In re Widening of Gratiot Ave., supra*, 573:

"The sole question on this appeal is whether it was proper for the jury to award damages for removal costs of trade fixtures. * * *

"As to the owner of land, the fixtures enhance the value of the land and, in awarding compensation where the owner removes the fixtures, the proper measure of damages is the value of the land as so enhanced, less the value of the fixtures in view of the necessity of severing them. * * * Since the value of the fixtures as severed will be decreased to the extent of the cost of detaching and reattaching them elsewhere, the cost of such removal is to be considered in awarding damages."

*In re Slum Clearance, supra*, 489, 490, we approved the following instruction of the trial court:

" 'As to those fixtures which the owner elects to take, the owner is entitled to just compensation. * * * Therefore, in considering the damages to be awarded for fixtures, as I have defined them, you may consider the value of the fixtures to have been decreased to the extent of the cost of detaching them and reattaching them elsewhere, and you should make an allowance in your award by such an amount as representing the damage to such respondents claiming compensation for the diminished value of their fixtures.' "

*In re John C. Lodge Highway, supra*, 263, 264:

"There is no question in the present case that the value of appellants' fixtures, as severed, will be decreased to the extent of the cost of detaching and reattaching them elsewhere; that the appellee as the condemning authority proposes to take the buildings stripped of the trade fixtures and pay nothing to appellants for the damages and costs sus-

tained.   Under the decision of *In re Widening of Gratiot Avenue, supra,* appellee's contention that appellants should suffer this damage without compensation is not justified.   *   *   *

"The separate computation and awarding of fixture removal damage was approved in *In re Slum Clearance (Appeal of United Platers, Inc.),* 332 Mich 485."

The department states:

"As fixtures they were part of the realty and were so appraised in the damages to the land and buildings.   Of necessity and definition, fixtures are part of the realty.

"The reprehensibility of the factory owner's position is increased by the admission that their demand for fixture removal damages includes fixtures for their new building."

The record does not sustain the department's contention that the commissioners included fixtures in determining damage to land and buildings.   The cost of certain new fixtures was submitted to the commissioners because, in regard to those fixtures, it was less costly to purchase them than to detach and reattach.   That the submission of such proof was proper is disclosed in *In re Slum Clearance, supra,* where, in approving an instruction of the trial court, we said (p 489):

"The trial judge agreed that appellant's tanks, pipes and other machinery were trade fixtures and permitted the jury to hear evidence as to the cost of disassembling and reinstalling the movable equipment, and as to the value of equipment which could not be moved without destruction or at cost exceeding value."

Appellant's position in regards to removal costs can be summed up from the following paragraph in its brief:

"In respect of fixture removal damages, Michigan is truly unique. Therefore, at least, as to owners, we ask the Court to follow the overwhelming weight of authority and refuse the allowance of fixture removal damages for machinery and equipment."

In refusing the department's request, we hold that Dake was entitled to allowance of fixture removal damages. We do not agree with the department's theory that "Since the State does not take the machinery, it should not be compelled to pay for its removal."

This was not an ordinary or "run-of-the mine" condemnation case. A large, successful, operating manufacturer was forced to desist further operations on its land because of the department's demand of said land for road purposes.

There is no doubt that Dake spent extensive time and effort in computing damages and that its computations were made after careful survey and study and such computations were made available to the department before the hearing. There is no claim by the department that it requested, or was denied, additional time to analyze Dake's claim before the hearing, or that the department was denied ample opportunity at the hearing to present its proof controverting Dake's claim.

It is not this Court's duty, or right, to assay the weight and value of the evidence introduced, but, rather, to determine whether the evidence was of such a nature that it could be properly considered by the commissioners. We hold that it was.

We are not called upon to determine whether we would have added to or subtracted from the commissioners' award of $393,296. Dake offered proof of $438,847.13 maximum amount of damages, and the department's minimum limit of damages was $187,360. The award was within the range of testimony.

In its brief, the department lists 5 different circumstances under which the Supreme Court will set aside confirmation awards. They are:

1. For fraud or misconduct affecting the rights of the parties;

2. For gross errors or mistakes;

3. For the erroneous rejection or admission of testimony affecting the rights of the parties;

4. For errors of such an extraordinary character or grossness as furnished a just inference of the existence of undue influence, partiality, bias, and prejudice, or unfaithfulness in the discharge of the duty imposed;

5. When it is apparent that the damages awarded are either inadequate or excessive.

We agree with appellant, but we do not feel that such circumstances existed in this appeal.

Therefore, we deny the department's petition that new commissioners be appointed to determine the just compensation to be paid.

The award is affirmed.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., did not sit.